## SCOTT v. BABER.

1. An agreement by which B sold S certain slaves, and S by a contemporaneous agreement, covenanted not to disturb the possession of B, under the penalty of $2,000, is in legal effect a sale of the slaves by B to S, with a reservation of the right of possession by B, during his life.
2. A deposition will not be rejected, because the clerk has made the commission returnable to a day when no court was held.
3. The objection cannot be made for the first time at the trial, that the commissioner was related to the party taking the deposition, for the purpose of suppressing it.

Error from the Circuit Court of Chambers.    Before the Hon. Geo. Goldthwaite.

DETINUE by the plaintiff against the defendant, to recover nine negro slaves.    The defendant pleaded *non detinet*, statute of limitations of six years, and six years' peaceable and adverse possession under claim of title in his own right, upon which issues were joined.    Judgment and verdict for the defendant.

Upon the trial, a bill of exceptions was sealed, from which it appears the plaintiff read in evidence a bill of sale made by defendant, as follows :  " Know all men by these presents, that I, Nathaniel Baber, of the State of South Carolina, and county of Abbeville, have bargained and sold, and by these presents, do bargain, sell and convey, unto Thomas Scott, of the State of Georgia, and county of Randolph, the following negroes, viz : a negro woman named Sealy, the boy Jacob and Lucinda, and Pleasant, he the said Scott to have and to hold the above four negroes, in fee simple, as good to all intents and purposes,—for value received of him, this 8th of October, 1812.

Signed in the presence of Robert Greer, Aaron Greer.

NATHANIEL BABER, [L. s.]"

It was further shown by answers made by the defendant to interrogatories exhibited under the statute to him by the

Scott v. Baber.

plaintiff, that at or about the date of the execution of said bill. of sale by Baber to Scott, the latter executed and delivered to Baber his written instrument, the substance of which is stated to be, "that Scott was not to interfere with or disturb the possession of said negroes mentioned in said bill of sale, and that if he did, then he was to pay the defendant the sum of $2,000. Plaintiff proved a demand of the said slaves the day before the suit was commenced; that the slaves sued for, but not named in the bill of sale, were the increase of the females therein named; also proved them in possession of defendant at the time of the demand, and the value and hire. There was also proof conducing to show, that there was a valuable consideration for the bill of sale, and that the instrument executed by Scott to Baber, was made contemporaneously with the bill of sale, and were in fact but one transaction.

Upon the trial, the defendant offered to read the depositions of three witnesses, who had been examined jointly. The plaintiff objected to the deposition—1. Because the commission was made returnable to the circuit court to be holden for Chambers county "on the third Monday in September next," and showed that no court was by law authorized to be holden for said county at that time. 2. Because the commissioners named in the commission, and who had taken and certified the deposition, were nephews of both plaintiff and defendant. It was shown the depositions had been in court during the term, and in the possession of plaintiff's counsel two days before the trial, and that no notice was given of the motion before it was made at the hearing.

The plaintiff, at the time of the cross-examination of said witnesses, objected to the following interrogatory, as leading, illegal and irrelevant : "State all you know, or may have heard said Scott say, that will tend to prove that he has no right to the negroes of Baber sued for, or any of them, together with every fact or circumstance that will make in favor of defendant, as if specially interrogated thereto;" the answer to which was also objected to, in which the witness states, "he was present at plaintiff's house, and heard him say 'Baber did not make his (Baber's) negroes work so as to make a support," &c. The court allowed the interrogatory

and answer, except the words "of Baber," which were excluded.

Other proof was made, which left the matter as to the agreement signed by Scott, uncertain as to its contents. The proof showed that the defendant had been in the possession of the slaves continuously since the date of the bill of sale.

The court was asked to charge the jury, that if they believed the instrument is truly set forth in defendant's answer, and that it was executed at the same time with the bill of sale, then, after the demand and refusal, his right of action to recover said slaves and their increase accrued, provided they find the contract has never been discharged, and that defendant had no previous adverse possession. The court refused this charge, and charged the jury, that it devolved on the court to construe written instruments. That if the defendant, in his answer to the plaintiff's interrogatories for discovery, had truly described the bond, then the proper construction was, that the defendant should not be disturbed in the enjoyment of the possession of the slaves in any event, until the time agreed on should elapse ; with a further provision that the plaintiff would pay to the defendant the sum of $2,000, in the event he did disturb him in the possession of the slaves. But that if the jury found that the instrument reserved to the defendant a life estate, plaintiff could not recover. So, neither could he recover, if the bond reserved an estate to defendant for any other defined time, until the expiration of such time. Further, that the bond disclosed in defendant's answer, did not authorize the plaintiff to demand the slaves at any time he chose, and then sue for and recover them.

The refusal of the court to exclude the evidence as shown by the bill of exceptions, and the charges asked by the plaintiff and refused by the court, as well as the charge given, are assigned by the plaintiff as error.

Rice, for the plaintiff in error, made the following points :

1. The bill of sale and instrument of writing executed at the same time, in relation to the same subject matter, must be construed as constituting but one contract. Sewall v. Henry, 9 Ala. R. 24.

2. The true construction of this contract is, that it vests in the plaintiff the title to the property and the right to the possession; but the plaintiff *permits* the slaves to remain in the possession of the defendant. The charge asked should have been given, and the charge given is erroneous. The permission of the plaintiff to the possession of the defendant, was merely gratuitous, and is not binding on plaintiff. Yet as it was a bailment, the plaintiff had no right of action until he made a demand. Stewart & Pratt v. Frazier, 5 Ala. R. 114.

3. Such a possession, acquired by the consent of the owner and permitted by him is a bailment, and however long it may be thus permitted to continue, cannot be deemed adverse, or bar the right of the owner. Strong v. Strong, 6 Ala. R. 345; Livingston v. Penn. Iron Co. 9 Wend. R. 511; Brown v. Lipscomb, 9 Por. 472, and cases therein cited on p. 478; Stedman v. Reddick, 4 Hawkes, 29; Stogdale v. Fugale, 2 Marsh. 136.

4. A commission to examine a witness, returnable on a day when no court is holden, or appointed to be holden, is actually void—a nullity. Kirk v. Suttle, 6 Ala. Rep. 679; Brown v. Simpson, 3 Stew. R. 331.

5. Although a party must move to suppress a deposition, before trial, when the objections are for mere informalities or irregularities, yet the rule is different as to illegal evidence, or as to objections which show the commission to be absolutely void.

ALLISON, with whom was GOODMAN, argued for the defendant.

1. The first ground of objection, made by plaintiff to suppress the depositions, was rightly overruled. The statute makes it the duty of the officer to appoint commissioners, and the legal presumption is, that they are suitable persons, and the agents of the court. Clay's Dig. 164, § 1, 2, 3. But if the court erred, it was upon a point in the discretion of the court, and not revisable in error. Spence v. Mitchell, 9 Ala. R 744; Cullum v. Smith & Conklin, 6 Ala. R. 625.

The second ground of objection to suppress the deposition,

24

was correctly overruled. The statute does not require the officer to state the time the commission should be returned. Clay's Dig. 165, § 3. The objection was upon an immaterial point, upon a clerical mistake made by an officer in the discharge of his duty, and for whose acts, defendant should sustain no injury. 3 Stew. & Por. 397. But if error, not revisable. 9 Ala. 744; 6 Ala. 625.

The third objection to interrogatories and answers, should have been overruled, because the objection was not sufficiently specified at the time of crossing the interrogatories. Milton v. Rowland, 11 Ala. R. 732; Borland v. Walker, et al. 7 Ala. R. 269. It was legal as propounded, and did not seek a legal conclusion, but facts relevant to issue. Massey v. Walker, 10 Ala. R. 288; 7 Ala. R. 784; 1 Ala. R. 632.

The charge asked should not have been given, because the contents of the instrument disclosed in the second answer of defendant, show the contract was executory. 2 Kent's Com. top. p. 492, 495, 496; 4 Ala. R. 305; 3 Ala. R. 679; 1 Ch. Pl. 122. They also show that Baber did not hold the negroes under the plaintiff, and could not be termed his bailee. 8 Cow. 589, 597; 9 Ala. R. 789; 8 Porter, 237, 240, 241; 9 Porter, 472, 477; 2 Black. Com. top p. 367.

CHILTON, J.—The bill of sale, executed by Baber, and the instrument executed at the same time by Scott to him in reference to the same transaction, form but one instrument. This needs not the aid of legal intendment, inasmuch as the bill of exceptions informs us, that both instruments form but one transaction. 9 Ala. R. 24.

If we append to the bill of sale given to Scott, the agreement executed by him to Baber, the agreement would amount to this: a sale by Baber of the slaves in suit to Scott, with an agreement on Scott's part not to disturb the possession of Baber under the penalty of $2,000. What is the effect of such an agreement? Did not the bill of exceptions show that a consideration was paid by the vendee to the vendor of the slaves, the fact that he stipulates not to disturb the possession of the vendor, would strongly incline the mind to the belief that this was merely a colorable arrangement between the parties, by which they sought to vest the apparent legal

title to the slaves in the vendee, while the vendor should in fact remain the owner. We are not, however, under the facts presented, authorized to place this construction upon the agreement, but in the absence of proof explanatory of the nature of the transaction, and showing the intention of the parties, we must, from the agreement itself, deduce its legal interpretation.

The first general principle in the construction of all contracts, whether verbal or parol, or under seal, is so to expound them as to carry into effect the intention of the parties, and this intention is to be collected from the whole agreement. Watts, Ex'r, v. Sheppard, 2 Ala. R. 425; Ely, use, &c. v. Witherspoon, 2 Ib. 131; Read v. Edwards, 7 Por. R. 508; 2 Bov. Bac. Ab. 576. If the terms of the contract be doubtful, it must be construed most strongly against the party who stipulates, lest by the obscure wording of his agreement, he should find means to evade it. Evans v. Saunders, 8 Por. Rr. 497. Again: The court will take care so to expound the instrument as, if practicable, to give efficiency to every part of it. Platt on Con. 145. Applying these general principles to the case at bar, let us ascertain the legal effect of the agreement executed and delivered by Scott, the purchaser of the slaves to the defendant—"that he (Scott) was not to interfere with or disturb the possession of said negroes, mentioned in said bill of sale, and that if he did, then he was to pay the defendant the sum of $2,000." If the reservation of the possession of the slaves to Baber, the grantor, is to be considered without limitation, then it would be utterly inconsistent with the estate created by the conveyance of the slaves to Scott, and, considered as a part of the agreement by which the estate is created, and being a condition, in this view of the case, *repugnant* to the estate, it would be void. It is held that a condition upon a feoffment in fee not to alien, is void because it is repugnant to the estate. Co. Litt. 223; 2 Bac. Ab. (Bouv. ed.) 301. So, if a man makes a feoffment in fee, provided that the feoffor shall have the profits, the condition is void. Co. Litt. 206. But, as the parties intended the contract to be operative, and we must sustain it if not inconsistent with the law, the above construction, which renders it nugatory and invalid, is consequently not the cor-

rect interpretation. Neither is it true, as contended for by the counsel for the plaintiff, that the possession was barely permissive, and without consideration. This view is opposed to the concession of the counsel, that the two agreements, contemporaneously executed by the parties, in reference to the same subject matter, form but one contract. 9 Ala. R. 24. The effect of the contract is a sale of the slaves, reserving to the vendor the possession. The agreement of Scott that he will not disturb, or interfere with the possession, does not amount to a sale, but is an acknowledgement that he merely purchased the title without the right to the immediate possession.

The only construction which we can give this contract, and which will accord with the general rules above laid down, is, to consider it a purchase by the plaintiff of the slaves in controversy, reserving to the defendant the possession of them *during his life*, and at his death, (if the contract be otherwise *bona fide,*) the plaintiff will be entitled to possess them. This construction gives effect to the agreement, and upholds the respective stipulations of the parties. The defendant, by the execution and delivery of his deed, conveyed to the plaintiff his right to the property; the plaintiff agrees he will not in any way interfere with or disturb the defendant's possession. The defendant, having parted with the title, none can be transmitted to his representatives after his death, and retaining only the right of possession, this ceases with his capacity to hold. The contract, then, vests the property in the plaintiff, postponing his right to possession until after the death of the vendor. That such contracts will be sustained, see Banks, adm'r, v. Marksberry, 3 Litt. R. 275; McCutchen, adm'r, v. McCutchen, 9 Por. R. 650; Sewall v. Glidden, 1 Ala. Rep. (N. S.) 52; Myers v. Peek's adm'r, 2 Ib. 648; Oden v. Stubblefield, Ib. 684; McRae, adm'r, v. Pegues, 4 Ib. 158; Wilkes v. Greer, at the present term.

It is manifest from what we have said, that the charge asked of the court by the counsel for the plaintiff, was properly refused, and that the charges given were equally as favorable to the plaintiff as the law will authorize.

The remaining point relates to the testimony which was

objected to, but allowed by the court. It is insisted that as the commission to take the testimony was made returnable to a day when no court was holden, it must be considered as a nullity, and that the deposition taken by virtue thereof should have been suppressed. We have no statute which authorizes this conclusion, and it would be most inconvenient in practice, to permit the misdirection of the clerk to the commissioners as to when they should have the deposition before the court, (and which could not injure any one except the party who seeks to use the testimony,) to defeat the ends of justice by excluding the proof. We think the insertion of the time when the court is to be holden in the commission, may be regarded as surplusage, and that it would be quite sufficient, had the clerk required the commissioner to return the commission to his office with all convenient speed. The cases of Kirk v. Suttle, 6 Ala. R. 679, and Brown v. Lipscomb, 3 Stew. R. 331, relied upon by the plaintiff's counsel, bear no analogy to the case at bar. In the first case, the commission was issued to one person, and executed by another—the other, was a case in which the original writ of *capias ad respondendum* was made returnable to a time when no court was holden. The distinction between such writ, and a commisssion, is too obvious to require illustration.

The court also very properly refused to suppress, because the commissioner was related to the parties. If the plaintiff could have availed himself of such objection in the manner he proposed in the court below, it is perfectly clear, that the commissioner being equally related to both plaintiff and defendant, any bias which might be presumed to result from relationship, must be regarded as balanced, and he stands equally indifferent, as though he were related to neither. Motions to suppress depositions, which have been taken according to the requisitions of the statute, are considered as within the sound discretion of the court, and when sprung for the first time, at the trial, should never be allowed, as their effect is to take the opposite party by surprise. Cullum v. Smith & Conklin, 6 Ala. Rep. 625; 7 Ib. 851; 9 Ala. Rep. 744.

The question objected to as leading, and which was in

part allowed by the court, we do not think objectionable. It certainly does not suggest to the witness the answer which he is to make. See 1 Greenl. Ev. 481; 1 Stark. Ev. 149.

From what we have said, it follows there is no error in the record, and the judgment of the circuit court is affirmed.