. POTIER & McCOY v. BARCLAY AND HUSBAND.

1. It is error to decree to a widow a sum certain, in lieu of dower, to be raised by sale of the estate to which the dower attaches. The decree should be for the payment annually of the sum ascertained to be the annual value of the dower interest.
2. Misrecitals in a supplemental, of the allegations in an original bill, can not change the character of the relief sought by the latter. The two must be taken together, as constituting but one bill.
3. A marriage solemnized in accordance with our statute, between parties capable of contracting, with their free, full and mutual consent, is complete, without cohabitation, and entitles them respectively, to all the rights incident to that relation.
4. When a marriage is contracted and solemnized in good faith, the subsequent refusal of the wife to live and cohabit with the husband, will not work a forfeiture of her right to dower, at his death, in the lands, of which he was seized during the coverture.
5. Dower is a legal right, and whether application is made for its allotment to a court of equity or a court of law, the principle of decision is the same. When the right is consummated by marriage, seizin, and the death of the husband, the statute makes it imperative on the court to allot it.
6. When a widow files her bill to have dower allotted her, and during the pendency of the suit, intermarries, it is not error to make her husband a co-complainant.
7. It is error to admit in evidence the copy of a deed, without accounting for the absence of the original, or giving notice to the adverse party to produce it.
8. A person authorised by a commission to take the testimony of a witness is *pro hac vice* an officer of the court, as such, is invested with the authority to swear the witness.
9. An objection to a deposition, that the commissioner, who was not a judicial officer, swore the witness, if there was any force in it, comes too late, when made for the first time at the trial.
10, There is no error in refusing to suppress a deposition, because the commissioner who took it, is a partner of the solicitor of the party in whose behalf it was taken, when it appears that said commissioner is not retained in the cause, and has never had any interest in it.

Error to the Court of Chancery of the 1st District. Before the Hon. A. Crenshaw, Chancellor.

This bill was filed by Josephine Barclay against the plaintiffs in error, for dower in the real estate of which Henry A. Barclay, her late husband, was seized, during the coverture, or at the time of his death. It alledges her intermarriage with him on the 24th December, 1842, and his death on the 31st October, 1843 : his seisen, during the coverture, of and in a considerable real estate ; the character and description of which she is ignorant, except as to a lot of ground, and improvements thereon, in the city of Mobile, which is particularly described in the bill ; and the execution of a last will and testament by him prior to his death, by which he made certain dispositions of his property, and appointed Potier and McCoy his executors. It further alledges, that said Potier and McCoy hove not, and do not intend to probate said will : that she is ignorant of its provisions, and has no means of learning what they are, but by its production ; and that she has, neither during her said late husband's life, nor since, parted with her right of dower in any of the real estate of which he was seized. The prayer of the bill is, that said Potier and McCoy, and the children of said Henry A. Barclay, by a former marriage, and who are named in the bill, be made parties, and be required to answer ; that said Potier and McCoy be compelled to produce the said will ; to discover the real estate of which, said Henry A. was seized and possessed at the time of his death, the rents they have received therefrom, and what are now due : that she be decreed her dower in the premises particularly mentioned in the bill, and any other of which said Henry A. died possessed, &c., and for general relief,

On the 19th August, 1845, the said Josephine filed her supplemental bill, in which, among other things, she alledges her intermarriage with John W. Reviere, since the filing of her original bill. The probate of the will of said Henry A. Barclay ; the qualification of said McCoy as executor ; the refusal of said Potier to qualify as such ; and the appointment and qualification of said Potier as guardian of the infant children of said Henry A., &c.

On the 2d Monday in Dec. 1845, said Potier was appointed by the chancellor, guardian, *ad litem*, of the infant defendants. Each of the defendants answered, denying that said

Henry A. died seized of any real estate whatever, and admiting the solemnization of the marriage contract, but insisting that it was never consummated by co-habitation: that within a few days after the marriage said Josephine abandoned the house of the said Henry A. Barclay, and ever afterward refused to live with him, or to acknowledge him as her husband, &c.

Testimony was taken by each party. At the hearing, the plaintiffs in error objected to, and moved for the suppression of certain depositions taken by the defendants in error, on the grounds, 1st. That the witnesses were sworn by the commissioner, and not by a judicial officer. 2d. That the commissioner was a partner of the solicitor for the said defendants in error. Each objection was overruled, it having been made to appear to the court that the bill was filed before the formation of the partnership between said solicitor and the commissioner, and that the latter had no interest in the case. The defendant in error offered and read to the court these depositions, which tended to show possession of the premises in question, in his life-time, by said Henry A. Barclay, and the copy of a deed from C. J. Mansony and wife to said Henry A., for said premises, dated the 23d day of November, 1832, to which copy deed the plaintiffs in error objected, but their objection was overruled.

The plaintiffs in error read in evidence a deed of gift from said Henry A. Barclay to said McCoy, in trust, for the children of said Henry A., of said premises, dated the 25th October, 1843, and depositions of witnesses, showing that on the third day after the marriage, the said Josephine abandoned the said Henry A., never returned to his house, refused to acknowledge him as her husband, and that they had never cohabited as man and wife.

The chancellor directed a reference to the master, to ascertain the rents and profits that had accrued since the death of the said Henry A., and whether dower can be assigned in the premises without manifest injury to the parties in interest, and if not what sum of money should be allowed in lieu of dower. On the coming in of the master's report, which stated that dower could not be assigned out of the premises,

without manifest injury to the parties in interest, and that one-sixth of the value thereof was a fair allowance in lieu of dower, &c. The chancellor confirmed the report, and rendered a final decree in favor of defendant's in error for one-sixth part of the value of the premises, to be raised, if not paid, by a sale thereof.

The said decree, and the several rulings of the chancellor, together with the making of the said John W. Reviere, the said Josephine's present husband, a party, are now assigned as error.

STEWART, for plaintiffs in error.

1. The decree must necessarily be reversed, because it orders a sale of the property to raise the dower portion. This cannot be done, and the point is settled in this court. 11 Ala. 20.

2. The case made by the bill, and the case made by the proof, are variant ; and the bill was not amended so as to conform to the proof, so the decree cannot be rendered. The issue made by the defendants was sustained. It was " that Barclay did not die seized of any land"—and so was the proof. He conveyed it by deed before he died.

3. The answer of the infants put every thing in issue: the complainants therefore were bound to prove *seizin in Barclay.* To do this, they offered a copy of a deed, without producing the original, or accounting for its absence, or giving notice to produce it. So the deed must be excluded in considering the case here. It was objected to below. The parol proof of ownership was also objected. There was then no sufficient proof of the seizin, and the admissions of the adult defendants don't bind them.

4. This brings us to the main question,—Whether the widow could claim dower in a case where the marriage ceremony was performed, but stopped there ?—where the wife refused to consummate the marriage, deserted her husband, and refused to perform the contract on her part, *in toto.* The case is an entire refusal to perform any part of the contract. The *espousal* and *solemnization* took place, but nothing more. We say she can claim no dower in such case. The question is entirely open in this State, and is to be decided

Potier and McCoy v. Barclay and Husband.

on principle.   We may consider—1.  Whether the marriage was sufficiently completed, so as to create the right of dower; and 2.  If it was, can the claim be enforced, where the party claiming utterly refuses to perform the contract on her part? And this, in a court of equity.

Was the marriage sufficiently complete?   We have here no marriage acts which interfere.   What is therefore marriage.   It may be said to consist of three things in general. 1.  Contract, agreement, consent or *espousals*.   2.  Solemnization.   3.  Cohabitation or consummation.

It is said that *espousal* and *solemnization* are sufficient to make a marriage complete.   How far this may be so in a spiritual sense, it is not necessary to inquire, and how far it might be sufficient to prevent another marriage.

There may be in some cases all three of the requisites, and still no dower ; and there may be cases where the marriage is annulled, and still there is dower.

I apprehend the true rule to be that espousals and solemnization are held sufficient on the ground that the *concubitas* is presumed to follow and relate back, but not on the ground that it is dispensed with.   33 Law Library, 43.

It may not be necessary to prove it to shew a valid or complete marriage, but the case is very different, where it is shewn that it never occurred.

Is it an essential and indispensible requisite to the relation of marriage.   It certainly is.

The incapacity of either party to consummate the marriage by sexual union, is so radical an objection, that it is sufficient to vacate the contract *ab initio*, and bar dower, as if the marriage never was valid.   33 Law Library, 29, 170.

Shall the wife, who refuses by her own act, to consummate the marriage, have a higher right than one who from misfortune or disease, is incapacitated.   In both cases, the object of the marriage of procreation of children is defeated.

If then the objection is sufficient to avoid the contract, *ab initio*, as if it never did exist, it would seem that proof of it, would be sufficient to bar a claim founded on such a contract, and which requires its existence.

By our statute, abandonment is declared sufficient cause for divorce ; refusal to cohabit is equivalent; therefore

it is considered as an essential ingredient to the contract. There is much uncertainty as to what is sufficient to constitute marriage. Before the marriage acts in England, it was considered governed by the law of the ecclesiastical courts. 2 Roper on Pro., Addenda, 32 Law Lib. 187 ; 33 ib. 50.

Espousals alone, when not solemnized, although *de praesenti*, would not, in England, give dower. 32 Law Lib. 194.

A marriage *per verba de futuro*, succeeded by cohabitation, (in the absence of the marriage acts) is sufficient to give dower. So it is held that a contract of marriage, *per verba de praesenti*, is sufficient, cohabitation being presumed to follow. But the rule should not hold where it is shown it does not follow, because it is a material part of the contract.

A marriage not consummated, and which is arrested without going into effect, canot give dower.

One of the requisites at common law, to create the right of dower is, that the case must be such that any issue she may have must be capable inheriting the estate. 4 Kent's Com. 35 ; 3 Bacon's Abr. 191; Clancy, 195. A marriage therefore, contracted and solemnized, but arrested before consummation, fails in this quality, requisite to give dower; because the issue she might have could not inherit the estate—they must be illegitimate. Such would be the case where there was issue of a marriage, but where the mother had been previously married, and the first husband living. There, no dower could be claimed. Again—no dower is given, where, though there be a marriage, there can be no children ; as if the wife be not over *nine* years old at the time of the husband's death. The reason given is, that she can have no issue under that age. 3 Bacon's Ab. 192. And the reason given why it is allowed, when the wife is, at the time of the marriage, of advanced age, is, that the law cannot determine at what time the capacity to have issue ceases. 3 Bacon's Ab. 192 ; 3 Vin. 210. The contract alone *is not* sufficient. 3 Bacon's Abr. 206. Neither is the contract and the solemnization sufficient—the validity of the contract, such as the law requires, viewed as a question of contract, will be inquired into, even where there has been cohabitation. 2 Dana, 102 ; 2 Black. 130 ; Clancy, 197 ; 3 Bac. Ab. 207.

Our ideas of marriage are derived from the ecclesiastical

courts, and founded on the civil law. By the civil law, consent and solemnization were sufficient, as I have said, before cohabitation being presumed. But the marriage was not final till cohabitation followed : and if one party desired to withdraw, and join a religious order, such party could do so, notwithstanding the marriage (if not consummated) and then the other could marry again. 1 Moreau & Carleton's Partidas, 453-4 ; Partida 4, title 2, of Marriage.

2. The next view we shall take of this case is, supposing the contract of marriage to have been complete and perfect, how is it to be viewed here, and on what principle shall the court act ?

It is insisted on our part, that the contract of marriage, so far as a right to property is concerned, is to be viewed like any other contract, and be governed by the laws governing all contracts for property between the parties. 1 Black. Com. 433. And secondly, that the court of chancery will apply all the rules of equity to this subject, as to any other, and will not change the laws or principles of its action, for this nor for any other case. Shelford on Marriage and Divorce, 33 Law Lib. 25.

It is " the lawful coupling and joining together of man and woman in one individual state or society of life, during the life-time of one of the parties, and this society of life is contracted by the consent and mutual good will of the parties toward each other." It is " for the mutual help of husband and wife." 33 Law Lib. 26. It is " the means of comfort to the married pair"—" the preservation and comfort of children." " The characteristic feature of the marriage contract is its permanency." (page 26.) " It is the most solemn engagement which one human being can contract with another." " It is the basis of civil society, and of sound morals—the source of domestic affections."

Now all these objects were wholly lost to Barclay in this case, and that by the wilful act of the wife. In lieu thereof, the greatest possible degree of disappointment, mortification, and destruction of peace of mind were produced, followed by speedy death.

There was, therefore, clearly, an utter failure of all the beneficial considerations to be obtained by the marriage, which

no damages could compensate. It is therefore against conscience to attempt to enforce this contract, even in a court of law—much more so, in a court of chancery.

This is an unexecuted contract, which is sought to be enforced. We have shown, that even had it been an executed contract, the cause of objection would be sufficient to disolve it. " Marriage is the union of husband and wife, with *intention* of always living together, and never separating." Moreau & Carleton's Partidas, vol. 1, 453.

PHILLIPS, contra.

The decree was for dower in the particular lot described in the bill, and it is alledged for error.

1. That the original bill and supplement, limit the complainant's right to dower only in such property as Barclay died siezed and possessed of, because this is the extent of the allegations.

The recital of the original bill in the supplement amounts to nothing—it was filed to bring another party before the court, and can neither enlarge or diminish the subject matter of complaint. Beside which, referring to the original bill itself, its own description is contradicted by the best evidence.

Although the original bill may not be free from hypercriticism, it sufficiently appears, that though Barclay was seized and possessed of the particular lot described, and that the complainant had never renounced her right to dower, and the defendant was called upon to deny this allegation, and also to set out what property he died seized and possessed of. It is evident, therefore, that it is not alledged he died seized and possessed of this particular lot ; but the inquiry of the executors as to what property he died seized and possessed of, was in addition to the allegation.

Assuming that relief could only be granted as to the estate whereof Barclay " died seized and possessed," it is contended that the deed for the lot in question, vested the title in McCoy and Potier, and there was nothing for the decree to act upon under the allegations.

The deed conveys the property in trust for the use and benefit of the grantor during his natural life, and after his death, for the use of his children.

The deed was not made for any valuable consideration—was never put upon record, and leaves the property, as far as complainant's rights are concerned, as they would be without the deed. So, if the whole right of the complainant had been confined to the property of which Barclay died seized and possessed, this instrument would present in law no obstacle to the relief prayed for, because as to her the deed being purely voluntary, he did die seized and possessed.

The evidence of seizin would have been good without the production of the deed from Mansony. It is sufficient to show possession in the husband during coverture. 2 Rep. Com. L. 59; 1 Baily, 77; 3 Fairf. 41.

The decree for one third of the rents and profits, from the death of her husband, is but fulfilling the character of the title which was then completed. Jackson v. O'Donegay, 7 Johns. 247; Curtis v. Curtis, 2 Bro. C. C. 632; Dormer v. Fortescue, 3 Atk. R. 130; Beavers v. Jemison et al. 11 Ala. Rep. 34.

But the decree is too favorable to appellant, for it should have allowed interest on the arrears. See case above cited, of Beavers v. Jemison.

The fact that the complainant left her husband's house, and refused to cohabit with him, is no bar to dower. The right flows from three successive circumstances—marriage, seizin, and death of the husband—the two first produce the title to dower, and the last consummates it.

Marriage consists in—1. The espousal, or personal contract. 2. The celebration of the contract according to the law. This being complete, all the rights and liabilities of the marriage state arise. "*Consensus non concubitus facit matrimonium.*"

Dower is considered of such a privileged character, that even in the case of a null marriage, arising from positive disability—Lord Coke has said, "if the wife be past the age of nine years at the time of the death of the husband, she shall be endowed, of what age soever her husband be, albeit he were but four years old." Co. Litt. 33, a.

By the common law, elopement and adultery worked no forfeiture. This rule was introduced by statute. Sidney v.

Sidney, 3 P. Wms. 269; Blount v. Winter, Ib. 276; Park on Dower, 223.

But the facts set out in the affidavit of Gardette, show neither adultery or elopement. They exhibit the case of a young girl, over-persuaded by designing relatives, to connect herself in marriage with a man sixty years of age, distressed by the want of those affections which naturally belong to the marriage state, seeking, in her mother's bosom, protection from that dominion which so ill assorted an alliance had imposed upon her.

The defence set up shocks our sense of propriety, is unsupported by a single adjudication, and finds no countenance in the analogies of the law.

CHILTON, J.—The decree in this case, cannot be sustained. The register reported one-sixth of the entire value of the premises, as dower, and the defendants are required to bring this sum, together with one-third the rents from the death of the husband, and the costs, into court, and on failure, the premises are decreed to be sold to raise the amount.

The chancellor, it seems, adopted the South Carolina rule, which is influenced by a statute of that State. Here we have no such statute, and our decisions must conform to the common law.

The mode of assigning dower in such cases as the one before us, has been so fully discussed, and decided in Beavers and Jemison v. Smith, 11 Ala. Rep. 20, and in Johnson v. Elliott, 12 Ib. 112, that it is altogether needless to say more upon it here. These cases will constitute sufficient guides for the future conduct of the cause, and show that the chancellor erred in decreeing a sale of the premises.

2. There are no allegations in the original bill, which would limit the issue to the lands of which the husband of the demandant *died seized*, and the mis-recitals of the contents of the original bill in the supplemental bill, which was filed to reverse the suit in the name of the husband, whom complainant, in the mean time, had married, cannot have the effect to change the character of the relief sought by the original bill. The supplemental and original bills must be taken together, as forming but one bill, and although the allega-

tions are somewhat loosely made, and liable to hypercriticism, still we think it is substantially averred that the deceased was seized of the premises in which dower was allotted during the coverture, and a discovery is sought as to other lands of which he *died* seized and possessed, in which dower is also prayed. 14 Ala. Rep. 150.

3. As to the main defence relied upon, the facts on which it rests may be thus briefly stated: The complainant, a young lady, aged about 16, was married to the deceased, who was an elderly gentleman. The espousals and solemnization of the marriage having been completed, it appears the relation stopped; for although she immediately went home with her husband, she refused to recognize him as such, and having remained for a few days, she abandoned him, and returned home to her mother, where she continued to live up to the death of her husband. In the mean time, she rejected all overtures for reconciliation, protesting he was no husband of hers, and that she would have nothing to do with him, or any thing that belonged to him.

The counsel insists, that the marriage not having been followed by cohabitation, was not consummated, so as to give to the wife the right of dower. The position cannot be supported. Mr. Jacobs (tit. Marriage) says, "nothing more is necessary to complete a marriage by the laws of England, than a full, free, and mutual consent between the parties," they being capable of entering into such a relation. Mr. Wood, in his Institutes of the Civil Law, p. 120, lays down the doctrine broadly, "that espousals *de praesenti*, or marriage, is contracted by consent only, without carnal knowledge." It is clear that the *vinculum matrimonii*, is the consent freely given by the parties competent to contract. "*Nuptias, non concubitas sed consensus facit*," is a maxim both of the civil and common law. 2 Kent's Com. 89; Reeve's Dom. Rel. 195, note 1; Dig. L. 50, tit. 17, § 30; Jackson v. Winne, 7 Wend. Rep. 50; Fenton v. Reed, 4 Johns. Rep. 52; Hantz v. Seeley, 6 Binn. Rep. 405; Bunting v. Leppingwell, 6 Coke's Rep. 29; 2 Salk. 447.

The marriage, in this case, having been solemnized according to our statutes, we are bound to regard it as valid

and complete, and as entitling the parties respectively, to all the rights which accrue upon entering into such relation.

4. The marriage being valid, has the complainant, by her conduct, forfeited her claim to dower in a court of equity, in which forum she seeks its allotment? This is a question of some embarrassment. We are not prepared to say, that if the object of the complainant in submitting to the marriage ceremony, was merely that she might entitle herself to be endowed of the property of the deceased, *without any intention* of performing any of the duties devolved upon her as a wife, and that had she carried out this intention, it would not have amounted to a *fraud* upon the husband, which in equity would induce the court to refuse its aid in allotting her dower out of his land. We express no opinion upon this point, as the facts of this case do not call for it. We think the proof in the record shows that the marriage was contracted and solemnized in good faith, and that the conduct of the lady, so unusual, as well as reprehensible, is to be attributed, not to any intention existing *previous to, or at the time of marriage*, but to a sudden sense of the unfitness of the match, which resulted in disgust for her husband, and at once banished all hope of that affection, so indispensable to render this most sacred relation, the source of joy and domestic comfort. Her conduct was certainly indefensible, unless indeed it finds an apology in her tender years, and consequent indiscretion, and in the unfortunate importunities of friends. Be this as it may, we find no warrant in the law, which equity must follow, to bar her right of dower by reason of it. And the learned counsel has not been able to find any adjudicated case, indicating such a rule.

It seems that the tenant in dower was greatly favored by the common law, so much so, that before the statute of Westminster 2, (13 Edw. 1) the adultery and elopement of the wife did not bar her right. 2 Co. Inst. 435; Park on Dower, 75.

So in Cogswell v. Tibits, 3 New Hamp. Rep. 41, it was held, the wife did not forfeit her right to dower by committing adultery, unless she eloped with the adulterer.

It is said also, if the wife refused to bring an appeal of her husband's death, when he was killed by another, she shall

not lose her dower; for this is only a waiver of the privilege the law gives her, to be avenged of her husband's murderer. So it seems, if she refused to minister, or come to her husband in his sickness, yet she shall be endowed, "for this is only undutifulness, which the law does not punish with the forfeiture of her subsistence." 2 Bac. Abr. 360, per 364. Indeed, such was the privileged character of dower at the common law, that although the parties were *infra annos nubiles*, yet, according to Lord Coke, "if the wife be past the age of nine years at the husband's death, she shall be endowed, of what age soever her husband be, albeit he were but four years old." Co. Lit. 33, a. So, in cases where the marriage was void *causa precontractus, consanguinitatis, frigiditatis*, or other similar causes, yet if the husband died before sentence of divorce pronounced, his wife *de facto* was entitled to dower. 2 Bac. Abr. 370. These authorities may suffice to show, that even though our statute authorized a divorce for an abandonment of ten months, instead of three years, yet no divorce having been obtained, the wife is dowable.

5. The counsel for the defendants below, insists, that the court of chancery should apply the ordinary rules which govern its action in civil contracts, to this case, and that the wife, having repudiated the contract of marriage, and violated it *in toto*, can claim no benefits under it. To this we reply, that dower is a *legal* right, and whether application for its recovery be made to a court of law or equity, the principle of decision is the same. 15 Peters's Rep. 21. When it is consummated by the three requisites, marriage, seizin, and death of the husband, the statute makes it imperative upon the court to allot it. Digest, 172. And it is for the legislature, not the courts, to prescribe the causes for which it may be forfeited. This may be, and doubtless is, a hard case, but the law would cease to be a *rule* of action, if the courts may bend its provisions to meet the exigencies of such cases.

6. There was no error in making the husband of the demandant a party to the bill. It may be well questioned, whether he was not an indispensable party. Adams v. Barron, 13

Ala. 205. See Hickman et al. v. Irving's heirs, 3 Dana's R. 125, as to the husband's interest.

7. It may be well to observe, lest our silence may be misconceived, that we do not see on what rule of evidence the copy of the deed from Mansony to Barclay was admitted. No notice was given to the opposite party to produce the original, nor was it shown to have been lost. This secondary evidence was, then, clearly inadmissible.

8. There is nothing in the objection, that the commissioner swore the witnesses to the deposition they gave. He was invested with this power by the commission, as an officer of the court *pro hac vice.* 9 Por. 160. The objection was also too late, being made for the first time at the trial. Scott v. Baber, 13 Ala. Rep. 182. As to the competency of the commissioner, see 13 Pick. 279.

For the error in the decree above noticed, the cause is reversed, and remanded for further proceedings.