BENJAMIN H. ROGERS

*v.*

ZAIDEE W. ROGERS.

[Filed August 30th, 1904.]

1. Sexual intercourse by husband and wife, after he has knowledge and means of proving her adultery, is condonation.

2. Forgiveness is not an essential element in condonation.

———

Heard on petition, answer and proofs in open court.

*Mr. Francis Scott,* for the petitioner.

*Mr. Addison Ely,* for the defendant.

GARRISON, V. C.

This is a petition filed by the husband against his wife, charging her with adultery and praying for an absolute divorce.

The parties to this suit were married in 1889.

The petitioner is a physician, practicing at Paterson, New Jersey.

They seem to have lived contentedly together until the summer of 1903.

In the summer of 1902 the brother of the petitioner, at whose cottage at Ocean Grove the defendant lodged for a time, informed the petitioner of certain conduct of the defendant with William Hobson, and for this the husband rebuked her, but they continued to live together, as before, and the husband continued to employ Hobson at his office in Paterson.

The office was in the house where the petitioner and his wife resided.

William Hobson was a young man of eighteen, who for some

time was in the employ of the petitioner, assisting him in his laboratory.

In the month of June, 1903, a colored boy in the employ of the petitioner told the petitioner that he had seen Hobson and the defendant embracing and kissing each other in the house at Paterson.

The other witnesses, subsequently produced at the trial, related their stories to him, and the petitioner himself had been the witness of suspicious occurrences.

From this time on the petitioner began to accuse the defendant of adultery with Hobson.

He consulted counsel, and in the presence of such counsel and of the mother of the defendant and of his brother, he accused her of infidelity.

He and his brother testify that at that time she confessed that she had been guilty of adultery upon one occasion with Hobson.

The mother of the defendant testifies that the defendant stood mute, and afterwards that she denied that she had been guilty.

The counsel of the petitioner, who was present, testified that the wife did not deny, but that she said that married people often made mistakes and afterwards came together again.

The defendant denies that she made any confession.

Apart from the alleged oral confession of the defendant, the evidence adduced by the petitioner was of three kinds—testimony as to the conduct of the defendant and Hobson while together; letters of the defendant to the petitioner, and letters of the defendant to Hobson.

Hobson was sworn as a witness on behalf of the petitioner, but was not questioned as to his relations with the defendant.

The testimony of the conduct of the defendant and Hobson, while together, is meager, and is of little, if any, value in aiding to arrive at the truth.

I think the defendant undoubtedly had conceived an affection for Hobson, and that she was, as the witnesses phrase it in their testimony, indiscreet in her conduct with him, but the testimony

of the witnesses as to the actions of the defendant and Hobson, when together, falls far short of such convincing or persuasive evidence as is necessary as a basis for a finding that the defendant was guilty of adultery.

There are many sentences in the letters written by the defendant to the petitioner which are inconsistent with her innocence, and there are some sentences in her letters to Hobson which, by inference, imply a guilty connection between her and him.

Were it necessary to decide whether a finding of adultery could be based upon the evidence in this suit, embarrassment would be found in the principle enunciated in *Kloman* v. *Kloman, 62 N. J. Eq. (17 Dick.) 153 (Vice-Chancellor Reed)*, that the confession of the wife in the oral statement and in the letters is not sufficient, in this state, to base a decree or finding upon.

And if in the suit at bar it is attempted to find corroboration to aid the confession, the corroborating evidence is very slight.

However, I do not find it necessary to decide the fact of the defendant's guilt.

The husband began his accusations of adultery against his wife about June 25th, 1903, "after," as he says, "I became convinced of a knowledge of her adultery."

From that time until July 1st, 1903, they continued to occupy the same bed.

He admits that they did occupy the same bed some of the time, but insists that he was ill and that they did not have sexual intercourse.

She asserts that they occupied the same bed all of that time, and that they did have sexual intercourse.

There is the same reason for inferring that sexual intercourse was attendant upon the continuation of connubial relations in this case as there was in the case of *Todd* v. *Todd, 37 Atl. Rep. 766 (Vice-Chancellor Grey)*.

The constant theme of conversation between them during this time was the accusation that he made against her.

Hobson continued to be received by the husband and was a party to many of the talks about the matter.

I find that at that time it was the general understanding that the wife should go away for two years; that the husband should supply her with money, and that at the end of that time he should procure a divorce for desertion.

I believe that he expressed this as his wish and that she agreed to comply with it, and that her hope was that she could effect a reconciliation with him and resume their married life together.

About the 1st of July she left for the country.

After she had been away a month, and about July 31st, 1903, he requested her to return.

His object in having her return to the State of New Jersey was to enable him to have served upon her the citation in this suit, he having caused the suit to be brought in July, 1903.

The charge in the petition is the commission of adultery with Hobson, at Ocean Grove and at Paterson.

She did return and went to her father's house at Hackensack, and for the next fifteen days they met upon several occasions, he going to Hackensack, to her father's house.

Her father was ill and the petitioner had been or was then attending him.

The defendant testifies that upon some of the occasions of their meeting at her father's house, in August, of 1903, they had sexual intercourse.

The petitioner denies this.

There are witnesses corroborating, to some extent, the testimony of the defendant in this respect.

It is not denied that from an early period in the insistment of the petitioner that the defendant was guilty of adultery he endeavored to get from her a written statement of her guilt, probably with the belief that it would be conclusive evidence in the suit.

At these meetings in Hackensack, in August, 1903, he was constantly requesting her to copy, sign and give to him a letter, composed by him, in which she confessed her guilt.

I find that after his accusation, in June, 1903, based, as that accusation was, upon all of the oral evidence since produced in the trial, and after the bringing of the suit, in July, 1903, the petitioner and defendant indulged in sexual intercourse.

I conclude that, as the wife stated in a letter to her husband, in January, 1904, he treated her as his wife for many weeks after he became convinced of her guilt.

The language of her letter of January 15th, 1904, is: "You certainly treated me, of your own desire and accord, for many weeks, as your wife, and yet you say you cannot now."

I do not believe that he at any time forgave her in the sense that he wiped out the past, for the purpose of beginning life again with her.

The testimony convinces me that, whatever other reasons may have actuated his conduct, he kept upon affectionate and intimate terms with his wife after he was convinced of her guilt, and after he was possessed of all the oral evidence that he afterwards produced, for the purpose of obtaining from her a written confession of her guilt, which he undoubtedly believed would be all the proof needed in his suit.

If the essence of condonation is forgiveness in the usual signification of that word, then the conduct of the petitioner in this case does not amount to condonation.

But I conceive that although the etymology of the word and its definition and use by many courts implies forgiveness, the application of the principle of condonation to proven facts by our own and other courts, is with no reference whatever to the presence or absence of forgiveness.

The law undoubtedly favors the marriage relation and its continuance.

It places at the disposition of the offended party a remedy enabling the offended party to break the relation by proper application to a court upon proof of certain defined offences.

If, after an offence has been committed and the offended party has become possessed of knowledge of the offence and of the means of proving it, the offended party elects to forego a

remedy which the law affords, he or she is said to have condoned the offence.

I do not think that courts now seek to discover the reasons which induce the offended party to forego the remedy afforded.

It has always been the law that proof of sexual intercourse, after knowledge of and means of proving the offence, constituted condonation.

This, of course, would not be so if, in addition to the proof of sexual intercourse after knowledge of the offence, it was a necessary element of condonation to show that the offended party had forgiven the offence.

It is not an answer to suggest that the law implies forgiveness, because there are innumerable instances in which the proofs show that the offended party resumed marital relations for reasons absolutely inconsistent with forgiveness, and many others in which the reasons contained no element of forgiveness.

The case of *Todd* v. *Todd, 37 Atl. Rep. 766,* is of that class.

I think that if we treat the doctrine of condonation as based upon the election of the offended party to forego the remedy which a full knowledge of the offence enables him to apply, if he will, we will be able more readily to reconcile the decisions of the courts upon this subject.

Since I find in the case at bar that the petitioner, after being convinced of the guilt of his wife, and after having in his possession evidence upon which he based his suit, continued to have sexual intercourse with the defendant, I conclude that she has made out the defence of condonation, and that the petition must be dismissed, with costs.

The petitioner urges upon the court that condonation is limited and conditional, and that the letters written by the defendant to Hobson, after the resumption of marital relations by the petitioner and his wife, broke the condition and restored to the petitioner the remedy waived by the condonation.

In the case of *Warner* v. *Warner, 31 N. J. Eq. (4 Stew.) 225,* Vice-Chancellor Van Fleet said: "The commission, subsequently, of any offence which falls within the cognizance of a matri-

monial court, is a violation of the condition and vitiates the pardon."

There is no proof of any offence such as that referred to in the above quotation.

I will therefore advise a decree as heretofore stated.