————o————

## JACOB C. KNOWLES *vs.* LULU KNOWLES.

1. WITNESSES—COMPETENCY—RELIGIOUS BELIEF—EVIDENCE.

Where the competency of plaintiff in a divorce case was objected to on the ground that he did not believe in a Supreme Being and did not believe in a future state of rewards and punishments, defendant was entitled to show by the testimony of persons, who had heard the declarations of plaintiff respecting his disbeliefs, that he was disqualified as a witness.

2. WITNESSES—DISQUALIFICATION—SUFFICIENCY OF EVIDENCE.

In a husband's suit for divorce, evidence *held* not to show a disbelief on the part of plaintiff in a Supreme Being and future state of rewards and punishment which would disqualify him as a witness.

3. DIVORCE—DEFENSES—CONDONATION.

In a suit for divorce on the ground of adultery, that the party complaining shall have admitted the other into conjugal society or embraces after knowledge of the crime is good defense.

4. DIVORCE—CONDONATION—EVIDENCE—"COHABITATION."

Condonation or forgiveness of adultery by a husband or wife may be inferred from the fact of husband and wife living together and cohabiting after knowledge of the crime; "cohabitation" being synonymous with sexual intercourse.

5. DIVORCE—EVIDENCE—SUFFICIENCY.

In a husband's suit for divorce on the ground of adultery, evidence *held* not to sustain the allegations of the petition.

*(February* 17; *April* 2, 1917.)

Judges CONRAD and HEISEL sitting.

*Andrew J. Lynch* and *William W. Knowles* for plaintiff.

*Albert Worth* and *Daniel J. Layton, Jr.*, for defendant.

Superior Court, Sussex County, February Term, 1917.

DIVORCE, No. 14, October Term, 1916.

Action by Jacob C. Knowles against Lulu Knowles for divorce.

The competency of the plaintiff to testify was objected to on the ground that he did not believe in a Supreme Being, and did not believe in a future state of rewards and punishments. Evidence heard. Plaintiff allowed to testify. Counsel for defendant asked that he be allowed to put witnesses on the stand to prove the plaintiff's former declarations of disbelief in a Supreme Being.

Counsel for plaintiff requested that the latter be interrogated by the court as to his religious belief, in order that the court might be satisfied as to the competency of plaintiff to be sworn as a witness.

Counsel for defendant contended that the practice was that if there are persons who have heard the declarations of the plaintiff respecting his disbeliefs, they should first be called to testify, and the plaintiff could then qualify himself by calling other witnesses who had heard him make declarations in favor of religious belief. Citing *State v. Townsend*, 2 *Harr.* (*Del.*) 543, and *Perry's Adm'r v. Stewart*, 2 *Harr.* (*Del.*) 37.

CONRAD, J.:—[1] We think that the plaintiff should step aside and defendant should have the opportunity of showing, if she can, that this plaintiff is disqualified as a witness, and he will be given an opportunity to show, if he can, that he is qualified.

Witnesses for the defendant testified that they had heard the plaintiff say that an agnostic was one who did not know, and an infidel was one who did not believe, and that he was an infidel, that he did not want any damned preacher saying anything over him, but wanted a friend to read at his funeral Ingersoll's oration at the grave of his brother, that he objected to his daughter going to Sunday School, that he picked up a Sunday School leaflet one day and said he didn't want that damned stuff taught to his child, that he believed that when he died that was the end of him, the same as a dog, that he did not believe in a Supreme Being.

Witnesses for plaintiff testified that they had heard him say that an agnostic was a doubter, who neither affirmed nor denied, that the atheist was the man who denied, and the infidel was a person who did not acknowledge the divinity of Jesus Christ,

which was the belief of the Jew and the Unitarian, and that he was in a class with them.

Plaintiff testified that he never said that he did not believe in a Supreme Being, that he had said that he did not believe in the divinity of Jesus Christ, but that he did believe in a Supreme Being, and a future state of punishments and rewards, that he did not take an oath, but that he believed in the sacredness of an affirmation as much as any man living.

Conrad, J.:—[2] We will permit the plaintiff to be sworn. .

The court proceeded to hear the evidence, the general character of which appears in the opinion of the court, delivered at the following April Term thereof.

Conrad, J., delivering the opinion of the court:

The ground for divorce in this case is adultery. The plaintiff in his testimony was positive as to the act of adultery on which he bases his claim for divorce. The respondent was equally positive that no such occurrence as was sworn to by the husband ever took place, and she denied positively that any improper relations had ever existed between her and the co-respondent.

The plaintiff's testimony is in no wise corroborated. True there was some testimony introduced to show friendly relations between the respondent and the co-respondent, but these friendly relations extended to all members of the plaintiff's family, and the co-respondent was shown to be a particularly close and intimate friend of the plaintiff, being frequently invited to join in automobile parties and other social functions that were given by the husband, rather than the wife.

The conduct of the plaintiff immediately following the alleged discovery of the infidelity of his wife throws grave doubt upon the reliability of his story. It is to the court quite inconceivable that a husband discovering his wife in an act of adultery should within forty-eight hours after such discovery invite the party who is charged with this grave offense to ride with himself and his wife to a seaside-resort, covering a half day and winding

up with a supper party at the home of the plaintiff in which the whole party joined.

Further the plaintiff admits that he lived in the same house with his wife for a period exceeding a year after the alleged act of adultery was discovered. The husband denies that during that time cohabitation took place with his wife, but on the other hand the wife avers that no change in the habits of life were had in that time, and she asservates that there were frequent acts of sexual intercourse between herself and husband in the year following the date of the alleged act of adultery and that cohabitation continued uninterruptedly up to within five days of the time when she left her husband's house.

[3, 4] It is well recognized law that if the party complaining shall have admitted the other into conjugal society or embraces after knowledge of the crime, it shall be a good defense. Condonation or forgiveness may be inferred from the fact of the husband and wife living together and cohabitating after knowledge of the crime. Cohabitation is synonymous with sexual intercourse. Whether cohabitation will be inferred or presumed from the fact of the husband and wife living together, is not so clear, nor do the books seem to settle the question, it being left to the facts as established in the individual cases.

[5] In the case at bar, as far as the outside world was concerned, there was nothing in the conduct of the parties from July, 1915 to August, 1916, to indicate that anything unusual had happened in the household. The co-respondent was on the same intimate and friendly terms with both husband and wife for a year after July, 1915, the date of the alleged act of adultery, as existed before. He was invited to walk and to drive with the husband and seems from the testimony to have in no regard forfeited the respect of the latter. The wife left her husband's house in August, 1916, not according to her testimony by reason of any accusations of adultery then or at any previous time made by her husband, but owing as she asserts, to long continued acts of insult and aggravation which to her had become unbearable, culminating in an indecent and insulting proposal on the part of the husband.

The court is confronted with most positive conflicting evidence in this case, evidence that we find it impossible to reconcile, but all the testimony in the case, and that of the plaintiff himself, exclusive of the one fact of the adulterous act, tends to corroborate the evidence of the respondent.

The testimony has been weighed and considered from every standpoint, and we have sought to make a just decision. Our conclusion is that the allegations contained in the petition have not been sustained; the divorce is refused and the court decrees that the petition for divorce be dismissed with costs on the plaintiff.