MAURY CREWS v. EVA HOLTON CREWS.

178 So. 139.

Division B.

Opinion Filed January 5, 1938.

*Hope Strong,* for Appellant;

No appearance for Appellee.

PER CURIAM.—This appeal brings for review final decree in divorce proceedings confirming the Special Master's Report, finding in favor of the defendant wife, dismissing the bill of complaint and ordering plaintiff to pay all costs.

Plaintiff husband filed his bill of complaint seeking a divorce from his wife on the ground of adultery. The bill alleged that the wife did, on February 13, 1934, at plaintiff's home in Winter Park, Florida, in her bedroom, have illicit intercourse with J. H. Overstreet; that immediately thereafter the wife left home and remained away for a

period of four weeks; that she then persuaded plaintiff to allow her to return, with the assurance that he would never regret it; that plaintiff permitted his wife to return to their home temporarily, hoping he would be able to forgive and forget her misconduct; that plaintiff subsequently learned of other acts of misconduct and adultery committed by his wife, and for which he could not forgive her; that plaintiff told his wife this and that he could not live with her any longer; that on August 6, 1934, plaintiff's wife left him again and has remained away from him continuously since that time; that subsequent to the time his wife returned and prior to their final separation, plaintiff learned that his wife and J. H. Overstreet had on many occasions been alone together in his home, and he believes that on each occasion his wife and J. H. Overstreet committed adultery.

The answer denied each of the material allegations of the bill of complaint.

The cause was referred to a Special Master, who after hearing all of the testimony, made the following report of his findings of fact and of law:

### "FINDINGS OF FACT.

"First. I find that the Plaintiff and the Defendant were married as alleged in the Bill of Complaint.

"Second. I find that the Defendant was guilty of the act of adultery as alleged in the Bill of Complaint.

"Third. I find that the Plaintiff, after his knowledge of the act of adultery charged, received the Defendant back into his home subsequently and that they lived together as man and wife thereafter for a period of about three months.

"Fourth. I find that during the time of the resumption of marital relations between the Plaintiff and Defendant as aforesaid, she was guilty of no acts of adultery and guilty

of no other conduct which would constitute any ground of divorce.

"Fifth. I find that Defendant was guilty of no acts of cruelty toward Plaintiff constituting any grounds for divorce at any time during the marital relationship.

## "Conclusions of Law.

"In my opinion, there was a complete and full condonation of the act of infidelity on the part of the Defendant by the Plaintiff, and for this reason, the Plaintiff is not entitled to the relief prayed for in his Bill of Complaint."

Exceptions were filed to the Master's Report.

The single question of law presented for our consideration is whether when a divorce is sought by the husband on the ground of adultery, and he lived with his wife subsequent to the particular acts complained of, but at his wife's insistence, with the assurance that he would never regret it, and he agreed to live with her in the hope that he could forgive and forget, and subsequently learned of other misconduct on the part of the wife, occurring before the acts complained of, of which he did not know at the time he agreed to take her back, whereupon he discontinued all relation with her and refused to live with her any longer, such conduct on the part of the husband amounted to condonement of all such acts on the part of the wife.

We have before us only the transcript of record and the brief of appellant, the appellee having failed to file a brief in her behalf.

The defense of condonation is an affirmative defense and like other affirmative defenses must be specially pleaded. Watkinson v. Watkinson, 68 N. J. Eq. 632, 60 Atl. 931, 6 Ann. Cas. 326, 69 L. R. A. 397; Smith v. Smith, 4 Paige (N. Y.) 432, 27 Am. Dec. 75; 9 R. C. L. 386, Sec. 179. The answer in this case did not undertake to set up the

defense of condonation; but, however, the allegations of the bill of complaint show a case of condonation though the allegations thereof attempt to qualify its effect. Though condonation is not specially pleaded, the court may, in its discretion, refuse to grant a divorce, where it appears from the evidence that the injured party, with knowledge of all the facts, has actually forgiven the injury, which has not been revived by subsequent misconduct. Smith v. Smith, 4 Paige (N. Y.) 432, 27 Am. Dec. 75; Note Ann. Cas. 1912C 24. The court may, in order to guard against fraud and collusion in the exercise of its jurisdiction, if there is reason to believe condonation exists, *ex officio* direct an inquiry into it, at any time before final decree is entered. Smith v. Smith, 4 Paige (N. Y.) 432, 27 Am. Dec. 75; 9 R. C. L. 387. If by inadvertence or mistake, condonation is not specially pleaded in the answer, on due application the defendant will generally be permitted to amend the answer so as to include the defense of condonation. Smith v. Smith, 4 Paige (N. Y.) 432, 27 Am. Dec. 75; Note Ann. Cas. 1912C 23; 9 R. C. L. 387. In the instant case, the allegations of the bill of complaint established a condonation which the allegations thereof attempted to qualify in its effect and sufficient evidence was adduced upon which the court could have found an unqualified condonation of the marital offense occurring on the 13th of February, 1934. In this state of the pleadings and in the light of the evidence adduced, the court properly considered the defense of condonation.

It is contended that plaintiff took his wife back after her affair with Overstreet, upon assurance from her that he would never regret it, and in the hope that he would be able to forgive and forget the act of adultery committed by his wife and Overstreet on February 13, 1934, and that this

did not constitute condonation. The plaintiff testified as follows:

"Q. Mr. Crews, what was the date on which you state that you saw the defendant in the room with James Overstreet in improper relations in your home? ·

"A. February 15, 1935—1934.

"Q. That was the only instance in which you of your own knowledge knew that there was illicit relations between the defendant and Overstreet?

"A. I knew the day before; I was there the day before. I didn't go in.

"Q. Did you and the defendant live together as husband and wife after that?

"A. Yes, sir.

"Q. For how long?

"A. For very near lacking a few days of being five months; I cannot tell you just how long.".

This testimony of plaintiff shows that plaintiff at the time he took his wife back had knowledge of two occasions when she and Overstreet had illicit relations with each other; and it also shows that plaintiff thereafter lived with her as man and wife for a period of almost five months. Renewing the relation of living together as man and wife embraces the renewal of sexual relations. See Knowles v. Knowles, 6 Del. Boyce's 458, 100 Atl. 569. Sexual intercourse without forgiveness is condonation if engaged in after the offended spouse has knowledge and means of proving adultery. Rogers v. Rogers, 67 N. J. Eq. 534, 58 Atl. 822; 2 Schouler—Marriage, Divorce, Separation & Domestic Relations (6th ed.) 1893, Sec. 1698. Though plaintiff may have taken his wife back on assurances from her that he would never regret it and in hopes that he could forgive and forget, yet his conduct of resuming with

her the relation of man and wife for a period of almost five months, amounted in law to an unqualified condonation of those acts of marital infidelity of which he was apprised at that time.

There was practically a total lack of any evidence to prove the allegation that the defendant had illicit relations with any person other than Overstreet. The evidence in support of such allegation was testimony of plaintiff in a general way stating that there were others, but without giving their names, or the times or places when and where the alleged illicit relations occurred. The Special Master and the Chancellor apparently did not think such evidence sufficient to prove the allegation because the information was gained from others and it was not shown that the statements plaintiff heard were made in defendant's presence. We likewise think the evidence on this point insufficient to prove the allegation.

It is contended that when plaintiff permitted his wife to return, he knew of no other acts of adultery that she and Overstreet had committed and consequently could not condone acts of which he was unaware. Plaintiff's testimony shows that he knew of two occasions when his wife and Overstreet had illicit relations, the day before he caught them and the day on which he caught them in the very act. After a short period of separation, plaintiff resumed living with defendant as man and wife. Thereafter plaintiff asserts he learned of other prior illicit acts between his wife and Overstreet, which he did not know of at the time he took his wife back and which he did not condone.

Full knowledge of a matrimonial offense is an essential element of condonation thereof. 19 C. J. 84. Only two cases were discovered when divorce was sought on the ground of adultery for acts that occurred prior to acts that had been condoned, and which prior acts were unknown to

complainant at the time of the condonation of the latter acts. In the case of Bernstein v. Bernstein, (1893) Probate 292, 12 E. R. C. 783, it was held that condonation of a wife's illicit relations with one man, which came to the husband's attention, would not condone illicit relations of the wife with another man of which the husband at that time had no knowledge. In the case of Rogers v. Rogers, 122 Mass. 423, it was held that where a wife condoned her husband's immoral conduct with the opposite sex by which he had contracted a venereal disease, without inquiring into and without being informed of the time, place or person, with whom the husband had committed the offense, or its frequency, she thereby condoned all of his acts of adultery with all other women, even though she did not know of some of them at that time.

There was no competent proof that the wife in this case had illicit relations with any other than Overstreet. So it was not a case of the husband condoning other prior acts with other men, but of condoning other prior acts with Overstreet, of which he said he knew nothing at the time of taking his wife back. Plaintiff claims there were other marital offenses, occurring prior to the condoned offenses, of which he was unaware at the time he took his wife back, but about which he learned thereafter, and seeks divorce because of that adultery, saying that those prior acts of adultery were unknown at the time of taking his wife back, and could not therefore have been condoned.

Plaintiff testified that he knew of two occasions when his wife and Overstreet engaged in illicit acts. He claims not to have known of some prior acts of adultery between his wife and Overstreet; but whether he actually did not know of the particular acts upon which this bill of complaint is based, is not important, because of other surrounding facts and circumstances which must have led the Special Master

and the Chancellor below to believe that there was a complete condonation by plaintiff of all illicit acts between the defendant and Overstreet prior to February 13, 1934. There was uncontradicted testimony to the effect that on several occasions plaintiff invited Overstreet to his home. There was also testimony to the effect that the husband and Overstreet drank wine together in plaintiff's home, and that they entered into an agreement whereby Overstreet was to furnish the materials and plaintiff was to furnish the labor in making the wine, which they were to jointly use and enjoy, and this extended over the years 1932, 1933 and up to February 13, 1934. The husband admitted that this testimony was substantially true. The defendant wife testified in effect that plaintiff wanted to get $500.00 from Overstreet as a settlement, but couldn't get that, so he took $250.00; that plaintiff tried from February 13 to around March 10, 1934, to effect this settlement, which settlement was immediately prior to the time that defendant went back to live with plaintiff; and that prior to February 13, 1934, plaintiff told the defendant he expected to get some money from James Overstreet. Plaintiff testified on that subject as follows:

"Q. Mr. Crews, you heard what the defendant said about some money paid to you by Mr. Overstreet? If such is the case, I wish you would explain in just as few words as possible what that was all about.

"A. After I told her on February 13th that she would have to leave, after the misconduct I had seen her doing in my home, as I stated the other day, she sent for me one night by her brother. I went over. I told her I was going to get the law in behind Jim. She begged me not to get the law in behind him. I says, 'I am not going to let him get away with anything like that, the way he has done me.' She says, 'Why don't you get some money out of him?' I

says, 'He hasn't got any.' She says, 'You don't know, you haven't tried yet'; she says, 'He could get hold of some.' I says, 'How much could I get, do you suppose?' She says, 'You can get $500.00 from him for that, but if you can't get a whole loaf better take a half, take $250.00 if you can't get $500.00.' She didn't want me to carry it to court.

"Q. But she did encourage you, in fact, insisted that you make Mr. Overstreet pay something by way of damages?

"A. Pay money instead of carry it to court.

"Q. By 'carrying it to court,' do you mean prosecuting him criminally?

"A. Yes.

"Q. It was your idea, as I understand it, to either make him pay damages or stand prosecution for what he had done, is that correct?

"A. Yes.

"Q. And he paid over the money to you?

"A. He paid $250.00 to me."

There was no showing made that any different or aggravated circumstances attended the prior illicit acts complained of than attended the acts which plaintiff admitted he knew about at the time he took his wife back, neither was there any showing that the defendant was morally loose with any man other than Overstreet. In view of all this testimony, the Special Master and the Chancellor were warranted in finding that the plaintiff had condoned all of his wife's illicit acts with Overstreet prior to February 13, 1934, and we are not warranted in disturbing that finding.

The case of Von Funk v. Von Funk, 120 Fla. 103, 162 So. 145, is not applicable here because a different state of facts existed there. In that case the husband remained in the same house with his wife until he had obtained suf-

ficient evidence to prove she had committed the marital offense. Whereas in this case the husband admitted knowing of acts which constituted marital infidelity, the only question involved being did condonation of the latter illicit acts also condone prior illicit acts.

There was no allegation and no proof of any illicit act between the wife and Overstreet or any other man since the condonement of the acts in question, that would give the husband a cause for divorce on the ground of adultery. The acts upon which this bill of complaint is based took place prior to the acts condoned.

Having carefully examined the record and having considered the brief of appellant, the only brief filed, we think that appellant has failed to make any error appear in the final decree below, and it is accordingly affirmed.

Affirmed.

WHITFIELD, P. J., and BROWN and CHAPMAN, J. J., concur.

ELLIS, C. J., and TERRELL and BUFORD, J. J., concur in the opinion and judgment.