HORTON, Judge.
The appellant wife filed suit for divorce on the grounds of extreme cruelty and sought custody of the minor children, alimony and suit money. After the filing of the bill of complaint and upon notice and hearing, the lower court granted the appellant temporary custody of the minor children, ordered the appellee to pay $40 per week for her support and that of the children, and enjoined the appellee from annoying or harassing the appellant. Ap-pellee filed an answer to the complaint denying the material allegations and a counter-complaint for divorce charging the appellant with extreme cruelty and adultery. The appellant answered the counter-complaint by a denial and as to the charge of adultery, alleged that any such acts on her part had been condoned by the appel-lee by reason of subsequent cohabitation, and the Chancellor ruled accordingly.[1]
Upon the issues made by the complaint, the answer, counter-complaint and reply thereto, the cause was tried. The trial judge granted the appellee a divorce upon *724 findings that the appellant had been guilty of extreme cruelty and adultery on two occasions; in Tucson, Arizona and subsequently in Florida, about the time the cause was heard. Custody of the children was awarded the appellee, the appellant was denied alimony and directed to convey her interest in the home to the appellee.
It is from this final decree that the appellant has appealed. She claims the lower court erred in a finding of adultery contrary to the evidence, and in requiring the appellant to reconcile with the appellee or to suffer an adverse decree if she did not comply.
The chancellor in the lower court was faced with a gargantuan if not an insurmountable task of attempting to bring a semblance of order and stability out of the chaos and confusion that had been built up over the years by a multitude of matrimonial storms. The chancellor’s efforts in attempting to reconcile the differences between the parties were commendable, but we feel from his own statement and our analysis of the evidence that he failed to apply the applicable principles of law to the evidence.
This court can see no useful purpose that would be served in rehashing the differences, discord and unfortunate circumstances that brought this marriage to a divorce court. The record is replete with acts of indifference and marital indignities committed by each of the parties toward the other. When viewing all of the evidence, we can only conclude that both parties were to blame for the lamentable situation that eventually culminated in separation. The chancellor below seemed to be of a like mind for he indicated that he felt neither party was deserving of having custody of the minor children.[2] The decree in this case obviously was based upon an alternative which the lower court gave to the parties with which the appellant refused to comply. In refusing the court’s ultimatum to reconcile with the appellee, she thereupon suffered an adverse decree.[3]
*725 Under .the circumstances reflected by the record, we conclude that the lower court was in error in finding on the basis of the evidence that the appellant had been guilty of adultery. The affair in Tucson was clearly condoned and the chancellor so found. The incidents in Florida were reported by two private investigators and consisted of certain questionable fishing trips in the Florida Keys. The facts proffered are wholly inadequate to support a finding of adultery. Although the nature of the alleged act is such that it is usually impossible to establish by direct testimony, there must be sufficient facts to justify a reasonable conclusion that such acts were committed. See Engebretsen v. Engebretsen, 151 Fla. 372, 11 So.2d 322. Cf. Ingraham v. Ingraham, 80 Fla. 75, 85 So. 666; Crews v. Crews, 130 Fla. 499, 178 So. 139; Coffee v. Coffee, 151 Fla. 771, 10 So.2d 431; Schuberth v. Schuberth, Fla., 1951, 52 So.2d 332.
The appellee announced in the lower court upon the conclusion of the taking of testimony that he did not want a divorce and he has, through his counsel, repeated that position to this court. It thereupon becomes obvious that no predicate existed for the relief granted. Although we are of the view that the evidence does not support a finding of adultery on the part of the appellant, we do not conclude that she is entitled to relief on her claim, as there is ample evidence in the record to support the chancellor’s denial of such relief.
In light of the foregoing views expressed, the decree of the lower court is reversed and remanded with directions to dismiss the appellant’s bill of complaint, the appel-lees’ counter-complaint and the amendment thereto.
Reversed and remanded with directions.
CARROLL, CHAS., C. J., and PEARSON, J., concur.

. “Mr. Levine: T object. It is apparent from defendant’s counterclaim the offense or imagined offenses are condoned from his own admission, anything that happened in Tucson, from his own deposition and sworn counterclaim.’ The Court: ‘I think the point is well taken. No use smearing. If be lived with her and did not want a divorce, still condoned.’ (Discussion off the record) The Court: ‘If she did it since in Florida I will entertain it; otherwise it is clearly condoned.”

. At the conclusion of all the evidence the court addressed the appellee as follows: “The Court: ‘I am forced to the conclusion that your wife is more faithless than she should be. I am thoroughly convinced neither party is deserving of the children and if there were a better or more workable situation in Florida I would take them away from you.’ Witness: ‘Why don’t you give me a chance again to try again to make a home?’ The Court: ‘You do not believe in divorce not even in the light of what happened?’ Witness: ‘The charges were worse in Arizona. I don’t know whether this sounds right. I am still in love with my wife and the children.’ The Court: ‘You don’t want a divorce now?’ Witness: ‘No. I even could go away for a year and when I came back maybe she would be different. At least I retain that Catholic religion. I think it is terrible for the children to be without parents.’ * * * Q. (the Court) ‘Your home is deteriorated unquestionably.’ A. ‘Yes, but it could bo repaired if we had some help.’ The Court: ‘Just as much your fault as your wife’s, even more so. That concludes this hearing. I will see counsel later on what X can do. Any time you want to come we will try and arrive at something sensible. I want you gentlemen to think about it. I am glad both are as cooperative to help the court arrive at some solution. In the meantime I am going to leave the matter status quo. * * * t tt

. The Chancellor states the alternative in the final decree as follows: “That the Court, after final argument, announced to the parties that every effort should be made to reconcile in view of Defendant having abandoned his counterclaim for divorce and evidencing a desire for reconciliation for the best interests of the four children of the marriage. The Court then announced its decision in the alternative as follows: (a) That if the parties could put aside their stubborn attitudes and reconcile for the sake of the children, the Court would see to it that Defendant gave the Plaintiff $50.00 per week for the expense of her table, and make the Defendant provide her .with an automobile for transportation, and allow the wife to run the home in dignity and without interference of the Defendant. (b) That the parties would be *725 given until Monday, September 24, 1956, to think the matter over, and if there was no reconciliation the Court would grant a divorce and award custody of the minor children to the Defendant, denying the Plaintiff permanent alimony. That on Monday,’ September 24, 1956, the parties appeared before the Court through counsel, and Plaintiff announced that she refused to consider a reconciliation; the Defendant announced that he would provide Plaintiff a car for transportation immediately, turn over all the family income per month to her, and would reconcile for the benefit of the children under any terms the Court desired. * * * ”