W. L. FARR, Appellant, v. SARAH OLGA FARR, Appellee.

**JUDGMENT:** Essentials—Acquiescing in Void Decree. Principle recog-
1   nized that a person over whom the court never had jurisdiction may, by laches or long acquiescence, estop himself from questioning the validity of the decree.

**MARRIAGE:** Presumption and Burden of Proof. A ceremonial mar-
2   riage generates a very strong presumption that the parties thereto were competent to enter into such relation.

*Appeal from Polk District Court.*—GEORGE A. WILSON, Judge.

FEBRUARY 9, 1921.

PLAINTIFF brought this suit in equity for a divorce, charging his wife with cruel and inhuman treatment. After the cause had been pending a year, he amended his petition by adding thereto a second count, asking that the marriage between the parties be annulled, on the ground that, at the time of such marriage, the defendant was already married to one Johnson, who was still living, and from whom she had never been divorced. The defendant, answering, admitted her marriage to plaintiff and her former marriage to Johnson, but alleged she had been duly divorced from the latter, six years before she became the wife of the plaintiff. On trial to the court, the plaintiff's petition and the amendment thereto were both dismissed, and he appeals.—
*Affirmed.*

*B. J. Cavanaugh,* for appellant.

*Parsons & Mills,* for appellee.

WEAVER, J.—The record presented by the abstract is very brief and fragmentary. Defendant pleaded and produced a certified decree of divorce from Johnson, rendered by the circuit court of Fulton, Illinois, at the May term thereof in the year 1900. It purports to have been rendered on service of summons by publication, and recites the failure of the defendant therein to appear or defend, the appearance by plaintiff in person and by counsel, the hearing by the court, the due publication of the summons, the willful desertion and abandonment of the plaintiff by the defendant for more than two years, without any fault on her part, and decrees that the plaintiff therein be thereby divorced from the defendant, and that the bonds of matrimony theretofore existing between the parties be dissolved, and the complainant be restored to all and singular the rights and privileges of an unmarried woman.

1. JUDGMENT: essentials: acquiescing in void decree.

The testimony on which said decree was entered was preserved and certified with the record. It shows the marriage with Johnson in the year 1894; that, in 1896, he left plaintiff, on the professed mission of finding work; that, during the first six months of his absence, he wrote to his wife, but that, since that time, he has not written her or visited her or contributed to her support, and that, until the divorce was granted, four years later, plaintiff had made her home with her parents. Her marriage with plaintiff took place in 1906, ten years after Johnson's desertion, and six years after her divorce.

The trial below in the present case developed nothing whatever in support of the charge of cruel and inhuman treatment. Indeed, the allegations of the petition in that respect are wholly frivolous, and do not state a cause of action. In this court, appellant relies wholly upon his alleged right to have the marriage annulled on the ground that defendant had a living husband. It is conceded by appellant that the decree of divorce from Johnson is found in the records of the Illinois court, but it is alleged to be void and of no legal force or effect because of certain defects in the notice or summons by which the proceeding was instituted, and that, because of such defects, said court never acquired any jurisdiction to entertain such proceedings, or to render judgment or decree therein. In support of this contention, appellant introduced the depositions of two members of

the Illinois bar, who express the opinion, as legal experts, that the circuit court of Illinois never had or obtained jurisdiction of the defendant Johnson in that proceeding, to authorize it to enter a valid decree of divorce against him. The opinion so expressed by these witnesses is based upon the proposition that certain alleged defects are found in the record, with reference to the service of the notice or summons by publication. Whether these objections are all well taken, or render invalid the decree entered by the circuit court, we think it unnecessary to decide. For the purposes of this appeal, it may be admitted, though not decided, that the service was ineffective to subject Johnson to a valid decree of divorce; but it does not by any means follow of necessity that appellant has shown himself entitled to the relief for which he prays. That court did have jurisdiction of the subject-matter and of the wife, who instituted the proceeding; and, while it was open to the defendant therein to ignore the decree entered without jurisdiction, or to go into court and by direct action have it set aside, it was also legally possible for him, by laches, neglect, or long acquiescence, to estop himself from the exercise of that right. Of the numerous cases so holding, see *Hurley v. Hurley,* 117 Iowa 621; *Sedlak v. Sedlak,* 14 Ore. 540 (13 Pac. 452); *Nicholson v. Nicholson,* 113 Ind. 131 (15 N. E. 223); *Earle v. Earle,* 91 Ind. 27, 39.

If the rule be sound (and we so regard it), and the party against whom a decree has been entered without jurisdiction may, by his own conduct, be held barred to impeach such decree in direct proceedings for that purpose, it would seem to follow of necessity that such impeachment cannot be accomplished by a stranger or third person in a collateral proceeding. But, even if this point should be ruled against the appellee, the appellant has still far to go to establish the truth of his charge that the woman whose status as his wife he now denies was the wife of a living, undivorced husband when he married her. He admits that a formal ceremonial marriage was solemnized between himself and appellee in 1906, and that they lived together in the relation so assumed 11 years or more, until he began this action for a divorce. His act in bringing such suit was an admission that the woman was his wife, and the relief he now asks therein is

2. MARRIAGE: presumption and burden of proof.

essentially inconsistent with the idea that she was, in fact, the wife of another man. The validity of the marriage from which he now seeks to escape is supported by some of the strongest presumptions known to the law, presumptions which, in our judgment, he has signally failed to overcome. His belated change of front from the attitude of plaintiff in a divorce proceeding to that of petitioner for the annulment of an alleged void marriage increases rather than diminishes the difficulties which confront him. The fact of the ceremonial marriage being admitted, the law presumes it to have been a legal marriage, and that neither party thereto became guilty of the crime of bigamy; and, if it be further admitted that either the husband or wife had been previously married, it will be further presumed, in support of the legality of the second marriage, that the former husband or wife is dead or has been divorced. The only evidence in the record to rebut the presumption of the death of Johnson is in a deposition by his mother, taken by the appellant, in which the witness says that she had, within the year, received a letter written to her by her son from England. No testimony of any kind was introduced to rebut the presumption that he had obtained a divorce. Concerning the necessity of such proof in a case of this kind, let us look for a moment to the authorities. Mr. Bishop, in his work on Marriage & Divorce (6th Ed.), Section 457, says:

"Every intendment of the law is in favor of matrimony. When a marriage has been shown in evidence, whether regular or irregular, and whatever the form of the proofs, the law raises a strong presumption of its legality, not only casting the burden of proof on the party objecting, but requiring him throughout, and in every particular, plainly to make the fact appear, against the constant pressure of this presumption, that it is illegal and void."

This language was quoted by us approvingly in *Leach v. Hall,* 95 Iowa 611, 617, a case where the validity of a second marriage was attacked on the ground that the husband had been married to another woman still living, from whom there was no direct proof he had been divorced. In giving effect to the presumption to sustain the validity of the marriage, we quoted the

rule as stated by Bishop, and added thereto in our own words the following:

"The law presumes that this second marriage was lawful, and not criminal, and that either Leach or his first wife had obtained a divorce before the second marriage."

We also there said, in terms quite pertinent to this case:

"If it be said that this rule requires one to prove a negative, it may be said in answer that very frequently one has the burden of proving a negative. Where a negative is essential to the existence of a right, the party claiming such right has the burden of proving it."

Says the California court:

"The burden of proof is on the party assailing a marriage on the ground that a former husband or wife is still alive, to show not only the former marriage, but also that it has not been dissolved by death or judicial decree." *Wilcox v. Wilcox*, 171 Cal. 770 (155 Pac. 95).

Such, also, is the holding in Indiana. *Boulden v. McIntire*, 119 Ind. 574 (21 N. E. 445). To overcome the presumption of the validity of a marriage, the evidence must be so strong and persuasive as to leave no room for reasonable doubt. *Maier v. Brock*, 222 Mo. 74. See, also, to same general effect, *Hunter v. Hunter*, 111 Cal. 261; *Waddingham v. Waddingham*, 21 Mo. App. 609; *Schuchart v. Schuchart*, 61 Kan. 597; *Coal Run C. Co. v. Jones*, 127 Ill. 379; *Harris v. Harris*, 8 Ill. App. 57; *Blanchard v. Lambert*, 43 Iowa 228; *Wingo v. Rudder*, (Tex.) 120 S. W. 1073; *In re Estate of Megginson*, 21 Ore. 387 (14 L. R. A. 540); *Jones v. Jones*, 48 Md. 391; *Potter v. Clapp*, 203 Ill. 592; and *In re Estate of Edwards*, 58 Iowa 431. Such is the practically universal trend of the American precedents. Such, also, is the law of England, the birthplace of our common law. In *Morris v. Davies*, 5 Cl. and F. 163, Lord Lyndhurst says that the presumption of the validity of a second marriage "is not lightly to be repelled. It is not to be broken in upon or shaken by a mere balance of probability. The evidence for the purpose of repelling it must be strong, distinct, satisfactory, and conclusive." And in the case of *Piers v. Piers*, 2 House of Lords Cases *331, it was said by Lord Campbell that the validity of the mar-

riage could only be negatived by disproving "every reasonable possibility."

To this end, it is well settled, as shown by cited cases and many more, which examination of the books will disclose, that, to be entitled to a decree of annulment, the plaintiff must overcome the presumption of the validity of his marriage by clear and satisfactory proof: (1) That the defendant wife was the lawful wife of Johnson at the time of her marriage to plaintiff; (2) that Johnson was living at said date; and (3) that Johnson had not himself obtained a divorce. But, as we have already noted, there is not a word of evidence in the entire record to rebut the presumption that the first marriage had been dissolved by judicial decree. If it should be argued that the presumption of a divorce, arising from the second marriage, should not be given effect without some corroborating circumstance, such support is abundantly supplied in the admitted fact that the acts and conduct of both parties to the first marriage had, for 10 years or more, been wholly inconsistent with the continuance of the marriage relation between them. They had not met in all that time, so far as shown, nor had either made any assertion or claim of marital rights as against the other, nor had either contributed anything whatever to the support, care, or comfort of the other. Though the wife, during all this period, continued her residence in Fulton County, which county was also Johnson's home until he deserted her, and where his mother still lives, this man and woman had been and remained as utter strangers to each other. If the presumption of divorce between them depended on corroboration (which it does not), more persuasive circumstances could not be desired. *Leach v. Hall*, 95 Iowa 611, 617.

The fatal weakness of the plaintiff's case for annulment of his marriage is too evident to justify us in prolonging this opinion, and the decree of the trial court should be and is—
*Affirmed.*

EVANS, C. J., PRESTON and DE GRAFF, JJ., concur.