48 So.2d 184

## STEINER v. STEINER.
### 6 Div. 914.

Supreme Court of Alabama.
Oct. 12, 1950.

Wilkinson & Skinner, of Birmingham, for appellant.

David R. Solomon and Lange, Simpson, Robinson & Somerville, all of Birmingham, for appellee.

STAKELY, Justice.

This is a suit for divorce by Sylvia F. Steiner against Leo K. Steiner, Jr., on the grounds respectively of (1) adultery, (2) addiction to habitual drunkenness since marriage and existing at the time suit was filed, (3) actual violence on the person of complainant attended with danger to life or health and (4) reasonable apprehension of such violence. The suit seeks custody

of their minor child, temporary and permanent alimony and an allowance of counsel fees.

The court rendered a decree of divorce, assigning no specific ground, awarded custody of the minor child to complainant with allowance of $250 per month for the support of the child, a girl nineteen years of age, and also allowed permanent alimony and counsel fees to complainant. The appellant makes only three assignments of error, (1) the allowance to complainant of $400 per month for her own support and maintenance, (2) the allowance of $10,000 to complainant as counsel fees for her solicitors of record and (3) taxation of the costs of the cause against the respondent. While the cause is submitted here on the foregoing assignments of error, it is also submitted on cross-assignments of error of the appellee, which question the adequacy of the alimony allowance made to her and the failure to make award to her of alimony pendente lite.

The case was submitted for decree on evidence heard orally before the court including evidence taken before the register. The evidence taken before the register is substantially the same as that heard before the court. The evidence is voluminous and need not be stated here in all its details. There is no question on this appeal as to the decree of divorce or the ruling of the court with reference to the custody and support of the minor daughter. The only real question here relates to the allowance of alimony and counsel fees made to the wife. These questions grow out of the estates which the respective parties are claimed to own and the conduct of the respondent which relates to the grounds of divorce.

We turn first to the estate and situation of Sylvia F. Steiner. She married the respondent, member of a banking firm in Birmingham, on October 15, 1924 and is now in her late forties. She is accustomed to live in surroundings that can be termed luxurious. The home where she has lived with her husband and children is situated in spacious grounds in one of Birmingham's best residential districts and is valued at about $45,000. It is claimed, however, that

she has a separate estate sufficient for her maintenance and therefore is not entitled to permanent alimony. The following is an itemized list of the assets of her estate with values insisted on by appellant. Tendencies of the evidence show the following with reference to these separate properties.

"1. 30 shares preferred (Raye-
    Namrof) stock at $100.00.. $3,000.00"

No dividends have been paid on this stock since 1940. Dividends thereon were paid in 1939-40 and had not been paid thereon for a long time prior thereto. The dividends are non-cumulative. The stock is non voting. It is in a closely held corporation and could probably not be sold for a substantial amount.

"2. 198 shares common-
    (Raye-Namrof) stock at
    $1,321.10, adjusted book
    value ................. $261,577.80."

This stock is non dividend producing. The income of the company is used to pay interest and principal on the mortgage indebtedness of the company and is not available for dividends. The shares of common stock belonging to appellee are less than 20% of the company's outstanding voting stock. Accordingly she has no control over the policy of the company with reference to declaration of dividends and therefore cannot obtain dividends. One witness valued this stock at $300 per share or a total of $59,400. The stock represents a minority interest in a closely held investment corporation and for practical purposes is a nonavailable asset.

"3. Undivided ¼ interest Joint
    Heir Account as of De-
    cember 31, 1948......... $59,531.50."

The mother of Sylvia F. Steiner, who was the first of her father's three wives, left a piece of property known as the Whitney Building to her four children, Edward, Maurice, Fred and Sylvia. This property was subject to mortgage. It has been managed as "Joint Heir Account" and the Joint Heir Account has never paid Sylvia F. Steiner any money. One of the assets of this account is a second mortgage on a piece of property in Buffalo, N. Y., which according to tendencies of the evidence is

of little or no market value because of failure of tenants in the property. If this item is taken out of the statement, the equity of Mrs. Steiner in the Joint Heir Account is reduced by half. The account owes a mortgage of $117,822.85, which is a lien upon its primary asset, the Whitney Building. All of the income of the account is required to service this mortgage. The actual value of this item is not greatly in excess of $20,000, which produces no income to Sylvia Steiner and because of substantial mortgage indebtedness cannot be expected to pay her any income even in the remote future.

"4. Sylvia F. Steiner's jewelry.. $17,450."

On the separation of the parties this jewelry was in the Steiner Bank in a lock box and it was necessary for Mrs. Steiner to bring a suit against her husband to obtain possession of it. Not one article in this lot of jewelry came to Mrs. Steiner from her husband. If Mrs. Steiner had been compelled to sell or pawn this jewelry to support herself, the evidence is lacking to show that it would have made available to her the substantial sum of money claimed to be its value.

"5. 51 Shares Eastman Kodak Stock (equity)............. $700.00"

In order to subsist Mrs. Steiner was compelled to pledge this stock to the bank for a loan of $1,500. It came to her from her own family and not from her husband. It is doubtful if she will be able to redeem this stock from the pledge from the allowance made by the court and the bills now outstanding against her, which were incurred during her life with her husband.

"6. Insurance policies June 1954, pays Mrs. Steiner retirement income $200.00 per month for life....... $22,574.00."

This insurance was a gift to Sylvia Steiner and her children from her father. Her children have the right to cash out two of the three policies involved at any time they desire and in this way deprive Mrs. Steiner of the proportionate part of the expected retirement income in 1954. This income is not now available to Mrs. Steiner and it may never become available to her.

The value attached to these policies is problematical.

"7. One new 1949 Oldsmobile."

While Mrs. Steiner was living with the respondent as his wife she was accustomed to the use of an automobile. She insists that she should not now be required to divest herself of the use of an automobile.

Appellant also insists on what are called "deferred assets of Sylvia F. Steiner as shown by record", which may be listed as follows:

"1. Contingent interest Raye C. Forman Estate ................ $65,906.73."

The will of Raye C. Forman, the step-mother of Mrs. Steiner, specifically provided that the decedent's husband, Benjamin Forman, should have the right to withdraw from this estate all or any part thereof, and the evidence shows that he has withdrawn a very large part thereof and is continuing to withdraw the corpus therefrom. At Mr. Forman's death it is problematical whether there will be anything in this estate available to Mrs. Steiner. There is nothing now available to her therefrom.

"2. Insurance Policies, June, 1954."

These are the same insurance policies described hereinabove and are subject to what was there said about them. What the situation with respect to this insurance will be in 1954 is a contingency which cannot now be determined in connection with Mrs. Steiner's financial assets.

"3. B. Forman under contract to will 1960 shares Raye-Namrof preferred stock to Sylvia F. Steiner.......... $205,800.00"

The record contains what purports to be a copy of the present draft of the proposed last will and testament of Mrs. Steiner's father. It appears that he leaves to some trustees for Mrs. Steiner "all the preferred capital stock of Raye-Namrof, Inc., which I may own at the time of my death, but in trust nevertheless * * *" It appears that this will has been executed pursuant to a contract to devise. If Mr. Forman decides to change his will it is claimed that all that Mrs. Steiner would have would be a lawsuit for breach of contract against her father with no way of proving what damages she had sustained by his failure

to devise this stock to trustees for her benefit during life. Furthermore there is the hazard that Mr. Forman would become insolvent prior to his death and tendencies of evidence show that he is in a hazardous business, namely, a women's specialty shop, with preferences in favor of his creditors. Furthermore the evidence tends to show this devise could be defeated by Mrs. Steiner's brother, Fred Forman, for matters not necessary to be here set out.

According to Mrs. Steiner she has no actual money in hand beyond an income of $80 per year dividends from her stock in the Eastman Kodak Company. Tendencies of the evidence show gifts made to Sylvia Steiner from her father and brothers in prior years of $200 per month. All of these gifts, however, were voluntary and ceased when the present trouble between the parties to this suit arose.

The Federal Income Tax return for 1947 of the complainant shows that she had a gross income of $4,921.76. In addition to this sum of money, she received $2,400 from her brothers, which has been referred to and which tendencies of the evidence show to be a gratuity. The records of Steiner Brothers, Bankers, show that during the year 1947 the appellee deposited a total of $10,783.93 in her account. In 1948 the income tax return filed by appellee shows a total income of $1,702.29. The records of Steiner Brothers, Bankers, show that during the year 1948 the appellee deposited a total of $11,415.39. Tendencies of the evidence show that up until March 1948 the appellee was allowed $300 per month by her husband for household expenses and in March, 1948, it was increased to $400 per month. Tendencies of evidence show that out of the allowance received she paid food for the family, utility expense, servants, her automobile expense, toilet articles, etc., clothes for herself and daughter. This suit was filed January 28, 1949.

We turn now to the income, estate and acts of the respondent. His federal income tax return for the year 1947 showed that he received a gross income of $21,344.97, which consists, without going into details, of salaries and directors fees from three corporations aggregating $13,071; interest $1,073.16; dividends $2,099.60; rentals $926.25; proceeds of sale of stock $1,699.96 and includes disability payments as an ex Air Corps officer of $2,475. The assets of the respondent may be roughly stated as consisting of 185 shares in Steiner Brothers worth approximately $55,000; 6,110-½ shares in the old Republic Credit Life Ins. Co.; 503 shares of preferred voting trust certificates of Coplay Cement Mfg. Co.,—55 shares of preferred stock therein and 400 shares of common stock therein; 11-½ shares in Bragno Company of Alabama; 12-½ shares of Brett-Butane Company and 15 shares of Shades Cliff Land Company. There appears to be no proof as to the value of these stocks. The evidence shows that he owns $40,000 of life insurance in solvent companies fully paid up and over $50,000 in other life insurance. He owns the estate on the top of the mountain where he lives as a home, which has been referred to, worth approximately $45,000. He owns an undivided ¼th remainder interest in the Hillman Hotel in down town Birmingham. This hotel property is valued at about $600,000. The proof shows that the Hillman Hotel in 1935 was subject to a mortgage for $225,000. There is no proof as to whether it has been paid or reduced in subsequent years. Tendencies of the evidence showed that there are three other pieces of down town property in Birmingham owned by the Guardian Realty Company, the stock of which is owned by Steiner Brothers, Bankers, in which respondent has an ownership of approximately 20%. At the time of filing his answer in this cause tendencies of evidence showed that respondent had cash in the bank between $3,500 and $4,000.

There are two estates in which the respondent has an interest. The first that of his Uncle Carl Steiner and the second that of his father, Leo K. Steiner, Sr. Under the will of Carl Steiner, deceased, the respondent owns an undivided ½ interest in the estate. According to the estate tax return of Carl Steiner this estate is valued at $113,193.48. There is testimony tending to show that the real estate shown in this

return has been sold for approximately $200,000. The stock in this estate according to tendencies of evidence has been sold for substantial amounts.

It is sufficient to say that according to tendencies of the evidence the net estate of Leo K. Steiner as reported for estate tax purposes has been fixed at $471,038.18.

During his life Leo K. Steiner, Sr., conveyed by deed to his two sons (including respondent) an undivided ½ remainder interest in the Hillman Hotel property in down town Birmingham,—thereby conveying to the respondent an undivided fourth interest in the remainder therein. There is a life estate in the mother of the respondent. She also owns 200 shares of stock in Steiner Brothers, Bankers, worth about $60,000. She is 73 years of age and in such bad health as to require the services of a trained nurse to wait on her and live in her home.

According to tendencies of the evidence the respondent breached his marital obligations over and over again. The record is replete with evidence of incidents which tended to show grounds which justified the decree of divorce and which showed that he had no regard for the feelings or sensibilities of his wife. There is evidence which shows brutality toward his wife, infidelity and a gross disregard for his marriage vows.

It is vigorously contended by the appellant that Sylvia F. Steiner is not entitled to any allowance for alimony. This contention is based on the language of § 31, Title 34, Code of 1940, which provides that an allowance for alimony shall be made on decree of divorce "if the wife has no separate estate, or if it be insufficient for her maintenance". In referring to this statute in Gibson v. Gibson, 203 Ala. 466, 83 So. 478, this court said that under § 3804 the wife is entitled to permanent alimony upon the granting of a divorce "unless she has a separate estate sufficient for her support and maintenance." See Higgins v. Higgins, 222 Ala. 44, 130 So. 677. Without question Sylvia F. Steiner has a separate estate. Has she an estate sufficient for her maintenance? What is the proper construction to

be placed on the words "insufficient for her maintenance"?

We cannot agree with the interpretation of appellant. Tendencies of evidence in this case show that such estate as the appellee may own is an unproductive estate at this time. It does not produce an income on which she can live and certainly does not produce an income on which she can live in the manner to which she has been accustomed. If an estate produces no income or an income on which the wife cannot subsist in the manner to which she is accustomed, then we consider that her separate estate is insufficient for her maintenance. Under the circumstances here shown a wife should not be deprived of alimony under the foregoing statute because by selling the corpus of her estate she may thereby maintain herself. The statute does not contemplate that a wife shall take her jewels for example and sell or pawn them in order to live. This would be a harsh interpretation of the statute with which we cannot agree.

We are impressed with the construction placed on the Kentucky statute by the courts of that state. The statute is that, "If the wife does not have sufficient estate of her own she may, on a divorce obtained by her, have such allowance out of [the estate] of her husband as the court considers equitable". KRS 403.060. The court said: "The interpretation of 'sufficient estate of her own' is that it shall be of such character and amount as will yield income or profits sufficient for her comfortable maintenance in a style suitable to her social standing. What her standard of living would have been had she remained the wife of the defendant is an important consideration. Kelly v. Kelly, 183 Ky. 172, 209 S.W. 335. The statute does not contemplate that no allowance shall be made out of the husband's estate if the wife could maintain herself by consuming her principal. * * *" Barnett v. Barnett, 292 Ky. 840, 168 S.W.2d 17, 18.

In determining the amount of permanent alimony there is no fixed rule since each case must be decided upon its own relevant facts in the light of what is fair and reasonable. But it is proper to

consider the earning ability of the parties, their probable future prospects, their age, health and station in life, duration of the marriage and the conduct of the parties with reference to the cause of divorce. Garlington v. Garlington, 246 Ala. 665, 666, 22 So.2d 89; Ortman v. Ortman, 203 Ala. 167, 82 So. 417. Where the husband is guilty of wanton or wicked conduct toward his wife, the allowance must be as liberal as the estate of the husband will permit under all the circumstances of the case. Johnston v. Johnston, 212 Ala. 351, 102 So. 709; Sharp v. Sharp, 230 Ala. 539, 161 So. 709.

Taking into consideration all the facts and circumstances in this case we think the allowance of permanent alimony to Sylvia F. Steiner is reasonable and it will not be disturbed.

On cross assignment of error the appellee insists that an allowance should be made for alimony pendente lite. The decree makes no specific reference to such allowance but merely provides that "respondent is ordered to pay to the complainant as alimony, support and maintenance the sum of $400.00 per month pending the further orders of this court." It is settled that an order for temporary alimony can be incorporated in the final decree. Ex parte Bragg, 241 Ala. 214, 2 So.2d 393; Jeter v. Jeter, 36 Ala. 391. It appears to us therefore that in rendering its final decree the court, acting in its discretion as it can in matters pertaining to alimony pendente lite and taking all the facts and circumstances of the case into consideration, rendered the decree as aforesaid. In other words a decree was rendered in which became merged both the right to alimony pendente lite and permanent alimony. We see no reason to make any revision here in this respect.

We have carefully considered the allowance of counsel fees for services in the trial court. The record is voluminous being embraced in three volumes totaling 1,363 pages. It is evident that considerable time and effort has been expended in the preparation and conduct of the case. Qualified and competent members of the Birmingham Bar testified that the services were worth not less than $10,000 nor more than $15,000 under the circumstances of the case. No one testified to the contrary. The court no doubt took all this in consideration in connection with the situation between the parties and especially the value of such services in its jurisdiction. Such allowance rests in the sound judicial discretion of the trial court which we are not willing to say has been abused. The proof shows that $2,500 was paid to counsel by the brothers of the complainant when suit was instituted as a retainer fee with the understanding that this amount would be refunded to them in the event an allowance was made by the court for counsel fees. This arrangement is not objectionable. Mancil v. Mancil, 240 Ala. 404, 199 So. 810. Considering all the circumstances in the case including the guilt of the respondent in causing the divorce, his wealth and the lack of income on the part of the complainant, we are not willing to disturb the allowance of counsel fees.

Application is made to us for an allowance of attorneys' fees for representation of the appellee on this appeal. This petition is granted and an allowance is here made in the amount of $2,500 which we consider adequate under all the circumstances. Walling v. Walling, 253 Ala. 337, 45 So.2d 6; Taylor v. Taylor, 251 Ala. 374, 37 So. 2d 645.

The decree of the lower court is affirmed with additional allowance of amount for attorneys' fees on appeal.

Affirmed with allowance for attorneys' fees on appeal.

FOSTER, LAWSON and SIMPSON, JJ., concur.