51 So.2d 876

**DAVIS v. DAVIS.**

**4 Div. 636.**

Supreme Court of Alabama.

March 1, 1951.

Rehearing Denied April 26, 1951.

Patterson & Patterson, of Phenix City, for appellant.

490

Smith & Smith, of Phenix City, for appellee.

SIMPSON, Justice.

This case is here to review a decree in a suit by the wife against the husband for divorce on the ground of cruelty, in which

she prayed for alimony, solicitors' fees and the custody of their two-year-old daughter.

The husband defended on the ground that a prior divorce decree in the State of Georgia in favor of his wife against a former husband was void; that therefore she was not legally divorced from her former husband, could not legally have contracted marriage with defendant, on the basis of which, by answer and cross bill, he prayed for an annulment of his marriage, yet asking for the custody of the child, even though should the marriage be annulled it would, in legal effect, bastardize his own daughter.

■ The decree here to be reviewed seems to contain obvious inconsistencies. It did annul the marriage of the couple, which, as observed, in effect illegitimates the child. At the same time, however, the decree ordered the defendant to pay to his former wife $50 per week for the support of the child, under which status so far as we know the court was without authority to so order. There is no duty on the father in that regard except as expressly provided by statute.—Law v. State, 238 Ala. 428(1), 191 So. 803; Lewis v. Crowell, 210 Ala. 199, 97 So. 691; Simmons v. Bull, 21 Ala. 501, 56 Am.Dec. 257.

The principal question relates to that phase of the decree annulling the marriage of the parties, since if error prevailed there the appellant's bill was well proven and entitled her to a divorce, alimony, solicitors' fees, etc., there being no countervailing evidence proffered by the defendant except on the issue of the custody of the child.

The conclusion of the lower court that the Georgia divorce decree had not dissolved the appellant's former marriage seems to be rested on the theory that, since twelve months residence in that state is requisite to giving the Georgia court jurisdiction, and the appellant was proven not to have been so domiciled for the required period, the decree of divorce was a nullity, and being so, the appellant could not have lawfully contracted marriage with appellee, a fortiori the annulment of the marriage of the present parties on the prayer of the cross bill was due to be ordered.

There are several reasons to our minds why this view of the case is erroneous, some of which will be mentioned.

■ As preliminary to the discussion, however, we should like to first refer to the general principle that the humane instincts of civilized society are against supercritical legal technicalities which would bastardize children and when a decree of divorce is rendered, another marriage contracted and children born, it is against public policy to vacate the decree if such an order would render innocent parties guilty of bigamy and their children illegitimate.—Fairclough v. St. Amand, 217 Ala. 19, 114 So. 472; Karren v. Karren, 25 Utah 87, 69 P. 465, 60 L.R.A. 294. We therefore must approach a decision of the question with this declared public policy in mind and if the record is susceptible of two interpretations, the burden being on the appellee to establish the invalidity of the prior divorce, as well as the nullity of his own marriage, we will accept the interpretation which would sustain that public policy and the validity of the subsequent marriage, if at all plausible from the recorded proof.

■ The first reason the decree of annulment cannot stand is that under our late decisions the Georgia divorce decree is entitled to full faith and credit in our courts. The requisite residence of the plaintiff in the Georgia suit was properly alleged and the defendant entered a general appearance in the cause (the effect being to join issue on that allegation), agreed to the submission of same at the appearance term of the court, and waived further notice of process. No actual fraud is claimed or appears to have been perpetrated on the court, nor was there any collusion between the parties to give it jurisdiction. The court assumed jurisdiction and decreed accordingly, making it proper that our courts, under our decisions, give full faith and credit to that Georgia

decree.—Mussey v. Mussey, 251 Ala. 439, 37 So.2d 921; Ex parte Jones, 249 Ala. 386, 31 So.2d 314.

It may be conceded that the view in this jurisdiction is somewhat more liberal with respect to giving full faith and credit to this character of foreign decree than pertains in several other jurisdictions, but the court has attained this view after full deliberation in order to place the marital status of parties relying on such decrees on a proper substratum of much desired certainty, so important to our body politic. See 118 A.L.R. 1525, 1526, for general discussion of the subject.

However, this first reason aside, though sufficient, there are some other vital impediments which throw doubt on the correctness of the decree under review in so far as it relates to the annulment of the marriage of this young couple. We will state two which are at once manifest.

One is, the facts presented by the record are not at all satisfactory in establishing that appellant was not domiciled in Georgia for the requisite statutory period so as to confer jurisdiction on the Georgia court to render the divorce decree. On this question of residence in Georgia, while it does appear that appellant may have given testimony regarding that status, some of which would be in conflict with the allegations of residence in her Georgia petition for divorce, she sought to explain this testimony and at one point gave testimony tending to show that she was in fact a resident of Georgia for the period required by the statute as predicate for jurisdiction of the Georgia court. Therefore, the record being susceptible of these two conflicting constructions, it will be the duty of the court to adopt that construction which would hold the Georgia decree valid in order to sustain our public policy heretofore adverted to. For analogy see Smith v. Gibson, 191 Ala. 305, 308, 68 So. 143; King v. Kent's Heirs, 29 Ala. 542, 554.

The other important circumstance to challenge the correctness of the decree of annulment is that the burden was on appellee to establish the truth of his charge that the woman he has lived with for three years and who bore him his child, whose status as his wife he now denies, was in fact the wife of a living undivorced husband when he married her—or afterward, under our rule of common law marriages, during their cohabitation as husband and wife.—Hall v. Hall, 139 App.Div. 120, 123 N.Y.S. 1056(1); 120 A.L.R. 830. This would be true even though the invalidity vel non of the Georgia divorce decree should be ruled in his favor. In his initial pleading he admitted the marriage and interposed a defense to his wife's divorce suit on other grounds and asked for relief essentially inconsistent with the idea that she was in fact the wife of another man. The rule is well established that the fact of the marriage having been admitted, it will be presumed to have been a legal marriage, that neither party thereto became guilty of the crime of bigamy, and if either the husband or wife had been previously married, it would be presumed, in support of the legality of the second marriage, that the former husband or wife was dead or had been lawfully divorced.—Farr v. Farr, 190 Iowa 1005, 181 N.W. 268; 120 A.L.R. 829; Hall v. Hall, supra; Whitman v. Whitman, 253 Ala. 643, 46 So.2d 422; Faggard v. Filipowich, 248 Ala. 182, 27 So.2d 10. Because also of this absence of proof to override the presumed validity of the second marriage, we would be reluctant to illegitimatize the issue of the marriage of this couple by pronouncing their marriage void under the slight evidence adduced to sustain that view.

The decree of annulment must therefore be reversed, set aside and held for naught. And this conclusion requires consideration of the remainder of the assignments of error, such as the right of appellant to a divorce, alimony and solicitors' fees.

On the issue of appellant's right to a divorce, as heretofore observed, the evidence was without conflict to sustain her claim and was entirely sufficient to warrant a decree to that end on the ground of cruelty. So considered, it will accordingly be here so decreed.

The court has carefully considered the record in consultation and we are much impressed that the exigencies of this case require that we exercise our discretion and render such decree on all the issues as the trial court should have rendered so as to end the litigation.

With this in view, we will also determine the questions of alimony, solicitors' fees and the custody of the child.

 The granting of alimony, including the allowance of attorneys' fees, is, of course, within the sound judicial discretion of the court to be regulated by many factors, such as the husband's ability to pay, the wife's station in life, her financial worth and income, the nature of the conduct of the respective parties, etc.— Russell v. Russell, 247 Ala. 284, 24 So.2d 124; Steiner v. Steiner, 254 Ala. 260, 48 So.2d 184; Morgan v. Morgan, 203 Ala. 516, 84 So. 754; Phillips v. Phillips, 221 Ala. 455, 129 So. 3; Code 1940, Title 34, §§ 32, 33. The misconduct of the husband was clearly proven, indeed not denied, and this also has a bearing on the question.— Steiner v. Steiner, supra. Yet the conduct of the wife in certain respects was likewise not above reproach and this must have play in a consideration of the matter. —Russell v. Russell, supra. It is undisputed that the husband has a large and seemingly regular income and on this basis the trial court thought $50 per week should be assessed against him for the support of the child. Using this conclusion somewhat as our guide, we think $300 per month, payable to appellant semi-monthly on the 1st and 15th of each month, for alimony and support of the child while in her custody to be just and proper, and when the child is in the legal custody of appellee the amount will be reduced to $200 per month, payable semi-monthly at the stated times. It will be so decreed.

 The solicitors for appellant are likewise entitled to a reasonable fee, including a fee for their services on appeal, commensurate with the labor and skill involved, the results of the litigation and the earning capacity of the parties.—Walling v. Walling, 253 Ala. 337, 45 So.2d 6; Taylor v. Taylor, 251 Ala. 374, 37 So.2d 645; Steiner v. Steiner, supra; Phillips v. Phillips, supra; Penn v. Penn, 246 Ala. 104, 19 So.2d 353. The lower court awarded $300 solicitors' fees without granting divorce, see Keith v. Paden,[1] 51 So.2d 9, and we assume without considering the matter of appeal. Due to the outcome of the case and the other factors involved, we think a very reasonable fee to be $500 for services in the trial court and $250 for services on appeal in this court, and it will be so ordered.

 It remains only to consider the matter of custody of the child which, as always, is a most troublesome and delicate matter to determine. Undoubtedly appellant's home surroundings are superior to those of appellee for the permanent residence and rearing of the child. Appellant lives with her father and mother in their home and her father is a well-reputed practicing physician in the city of Phenix City. Appellee has his home in a garage apartment on his father's dwelling lot and presumably it is proposed that the child, if custody be awarded to him, will reside to a considerable extent with her paternal grandparents. There is no specific proof as to the character of this home, but there is evidence that appellant and his father are engaged in business which is beyond the pale of the law. But the evidence is likewise without dispute that appellant, during her marriage, has also been engaged in this character of business with her husband and appellant's sister also is employed in one of those establishments. Considering the general atmosphere in which the child will be reared, therefore, the court is hard put to determine exactly what award of custody would serve the best interests of the child. The trial court thought that alternating the custody from one to the other each week would be proper. But to our minds this method would be very deleterious to the stability of the child's home surroundings. We think an award on a more permanent

1. Ante, p. 294.

494

basis would be better. As stated, the child is of tender years (two) and the presumption is that she would fare better in the care of her mother and in her mother's home.—McLellan v. McLellan, 220 Ala. 376, 125 So. 225; Anderson v. Anderson, 165 Ala. 181, 51 So. 619; Code 1940, Title 34, § 35. Our view, therefore, is that the regular custody of the child be awarded to the mother for nine months, from September to May, both inclusive, and to the appellee for three months, from June to August, both inclusive, with the right of reasonable visitation on the part of either parent when in the custody of the other. This likewise will be so ordered.

The conclusion reached renders it unnecessary to consider the question of temporary custody or the remaining assignments or any of the cross assignments of error.

A decree will be entered pursuant to the foregoing, but the cause will be remanded to the lower court for enforcement and for such later modification as may become necessary, should the status of the respective parties or that of the child change so as to warrant it.

Let the appellee pay all the costs.

Reversed in part and rendered and in part modified, and the whole cause remanded.

LIVINGSTON, C. J., and BROWN, FOSTER, LAWSON, and STAKELY, JJ., concur.

On Rehearing.

SIMPSON, Justice.

On a recanvass of the authorities in the light of the brief and argument of counsel applying for rehearing, we are still convinced of the soundness of our original conclusions. Deferring, however, to counsel's earnestness, we will extend the opinion to comment that Taylor v. Taylor, 249 Ala. 419, 31 So.2d 579, is no authority to contradict the holding that if the marriage between the parties be declared void (by invalidating the Georgia divorce decree) because appellant had a living, undivorced

spouse, the issue of the marriage would be rendered illegitimate. The Taylor case was where, pursuant to § 4, Title 34, Code 1940, a young man under the age of seventeen years was permitted to interpose proceedings to invalidate his marriage, the court holding that the marriage was not void but merely voidable and that the rights of the parties and their child would be fixed as of the date of the rendition of the decree, having the effect of making the child legitimate. In the case at bar, however, we are dealing with an alleged void status. If the court should annul the prior divorce decree of Mrs. Davis and thereby adjudicate that when she married and when the instant proceedings were instituted she had a living, undivorced husband, then there was neither ceremonial nor common law marriage between her and appellee and the entire status would be void *ab initio*, rendering the issue thereof illegitimate. As was observed in Lewis v. Crowell, 210 Ala. 199, 97 So. 691, cited supra: "Jonas Crowell and Lucy Smith for many years prior to her death lived together as husband and wife, but during this time Jonas had a living wife, from whom he had never been divorced, and Lucy had a living husband, from whom she had never obtained a divorce. These two children were born while Jonas and Lucy were living together; and it appears, from the evidence that Jonas was recognized as their father. As one had a wife and the other a husband living at that time, and no decree of divorce dissolving the former marriage had ever been rendered by a court of competent jurisdiction, they could not be husband and wife under a common-law marriage. Baccus v. Eads, 209 Ala. 578, 96 So. 757; Potier v. Barclay, 15 Ala. 439. *These children are bastards, illegitimate children * * *.*" (Emphasis supplied.)

We will add that since original deliverance, the case of Johnson, Petitioner, v. Muelberger, 71 S.Ct. 474, was decided by the Supreme Court of the United States, and which we think would also sustain the necessity of our giving credit to the Georgia divorce decree, regardless of our own

liberal rule adverted to in the original opinion. Cf. 27 C.J.S. Divorce, § 336, p. 1304.

The application for rehearing is due to be overruled. So ordered.

Application overruled.

All the Justices concur.