58 So.2d 457

**McGREGOR v. McGREGOR.**

**6 Div. 321.**

Supreme Court of Alabama.

April 17, 1952.

Ling & Bains, Bessemer, for appellee.

Beddow & Jones and G. Ernest Jones, Jr., Birmingham, and Ross, Ross & Ross, Bessemer, for appellant.

SIMPSON, Justice.

Horace B. McGregor sued Ophelia Garrett McGregor for divorce, alleging her adultery with one Fowler, and for the custody of their nine-year-old daughter. His wife countered with a cross bill denying the charge of adultery and praying for a divorce from her husband on the ground of cruelty, for the custody of the child, and for alimony.

Suit money is not seriously involved, since the complainant, on advice of his counsel, paid defendant's lawyer a fee of $150. This seems to be sufficient in view of the circumstances shown. Savage v. Savage, 246 Ala. 389, 20 So.2d 784; Penn v. Penn, 246 Ala. 104, 19 So.2d 353.

The trial court denied the husband the divorce on the alleged ground of adultery of his wife, granted the wife a divorce on her ground of cruelty, but awarded the major custody of the child to the father (full custody in the father until the summer of 1952, with custody for two and one-half months each year in the summer when school is not in session to the mother, if she so desires), and a small alimony of $875 as lump sum—more or less in the nature of a joint property settlement—payable in installments of $30 per month (after which no further alimony would be allowed). No allowance was made for the child when staying with her mother.

■ This decree would seem to be somewhat inconsistent, since generally the losing party in a divorce action is not dealt with as favorably as seems to have been accorded the complainant here. Davis v. Davis, 255 Ala. 488, 51 So.2d 876; Steiner v. Steiner, 254 Ala. 260, 48 So.2d 184, liberality accorded wife with respect to alimony when divorce granted because of husband's cruelty; George v. George, 255 Ala. 190, 50 So.2d 744; Hawkins v. Hawkins, 219 Ala. 31, 121 So. 92, wife receiving divorce, account of cruelty of husband, circumstance to be considered in her favor in awarding custody of minor daughter; and although the father's natural right is not to be arbitrarily disregarded, Allen v. Allen, 239 Ala. 116, 194 So. 153, and a pertinent inquiry is which party was at fault in terminating the marital relation, Hammac v. Hammac, 246 Ala. 111, 19 So.2d 392; Gayle v. Gayle, 220 Ala. 400, 125 So. 638, it is only where the evidence justifies the conclusion that the wife has been guilty of adultery is it generally conclusive of her unfitness to have custody of the child, Hanby v. Hanby, 229 Ala. 527, 158 So. 727; Johnson v. Johnson, 215 Ala. 487, 111 So. 207.

■ The question as to the propriety of the alimony allowance is minuscule in importance under the circumstances which we will later advert to. But the matter of grave concern, as always in such cases, relates to the phase of the decree vesting the major custody of the child in the father, since generally the mother is the preferred custodian of a daughter of tender years unless her unfitness is so clear that the judicial mind is clearly convinced that the best interest of the child would be subserved by leaving her with her father. Davis v. Davis, supra; Griggs v. Barnes, ante, p. 21, 57 So.2d 61.

■ However, there is another principle of controlling importance well known to the

bench and bar, and is only repeated here for emphasis. The evidence was heard *ore tenus* in open court and we have consistently held to the rule that we will not disturb a finding on the facts in such circumstances unless, after allowing all reasonable presumptions in its favor, we are convinced that it is palpably wrong or clearly opposed to the weight of the evidence. Ray v. Ray, 245 Ala. 591, 18 So.2d 273; Johnson v. Johnson, supra. The theory is, we will not substitute our judgment for that of the trier of facts at *nisi prius,* on whom rested the primary duty and responsibility of determining the matter, although that conclusion might have been different from that of this, a court of review, had we been sitting in judgment in the first instance. Fitzpatrick v. Shine, 254 Ala. 323, 48 So.2d 220.

The entire record has had the court's careful and sympathetic study, in order to determine whether or not the trial court has dealt equitably and justly with this unfortunate family, and particularly the little girl who has been subjected to this tragic circumstance. In view of the overriding presumption attending the correctness of that court's rulings, we have concluded to let the decree stand, subject to the slight modification later to be noticed.

■ A short recital of the pertinent facts is necessary in order to illustrate our own conclusions, but before entering upon a discussion of the evidence, we will first observe that the court was probably correct in denying the husband a divorce from his wife on the serious ground alleged, since her conduct, though indiscreet, was not established by that degree of proof which would lead "the guarded discretion of a reasonable and just man" to the conclusion that the act of adultery with Fowler had actually been committed. Gardner v. Gardner, 248 Ala. 508, 28 So.2d 559; Morrison v. Morrison, 95 Ala. 309, 10 So. 648; Roubicek v. Roubicek, 246 Ala. 442, 21 So.2d 244.

But there is a strong tendency in the evidence that by the wife's unseeming conduct the just suspicions of her hard working husband were naturally aroused, which undoubtedly precipitated the tragic break-ing up of a happy home. To conclude otherwise it would have to be determined that all the witnesses of complainant who testified with respect to this material issue were unworthy of belief, which does not impress us as a correct appraisement of their testimony. As stated, however, the circumstances were suspicious and no more, and as a matter of law and for the best interest of all parties, we would have concluded, as did the trial court, that the charge of adultery was not proven. It is on account of the misconduct of the appellant that appellee's attorney argues so strongly for an affirmance of the decree *in toto* and perhaps which motivated the trial court in dealing so strictly with her with respect to the alimony allowance and the award of custody of the child.

■■ This view as regards the alimony allowance is justifiable and we are not disposed to disturb the decree in that respect. The husband has a meager income from his wages as a day laborer and there is nothing in the evidence tending to show that the wife would not be capable of earning her own living, and it was her indiscreet conduct which precipitated the marital breach. The allowance of alimony is left much to the judicial discretion, Sills v. Sills, 246 Ala. 165, 19 So.2d 521, and the misconduct of the wife, even though not grounds for divorce, may be considered as in a measure palliating the offense of the husband and as abridging her claim to an allowance for alimony. Jones v. Jones, 95 Ala. 443, 11 So. 11, 18 L.R.A. 95; Savage v. Savage, supra. And the courts have, of course, approved the award of lump sum alimony, payable in installments. Roubicek v. Roubicek, supra; Smith v. Rogers, 215 Ala. 581, 112 So. 190. The alimony phase of the decree is therefore ordered affirmed.

■ But the custodial status of the child is governed by different principles and, as first noticed, we are in some doubt as to the wisdom of granting the father the custody of his nine-year-old daughter during the school months, the most important periods of her formative years, and to her mother only during the summer vacations. It is a well-nigh universal concept that a child of tender years, especially a daughter, re-

quires the care and attention of her mother and that the mother, rather than the father, is generally the proper custodian if a fit person in that respect. Chamblee v. Chamblee, 255 Ala. 35, 49 So.2d 917; Piner v. Piner, 255 Ala. 104, 50 So.2d 269; Knowles v. Knowles, 246 Ala. 228, 20 So.2d 200; Arnold v. Arnold, 246 Ala. 86, 18 So.2d 730; Hawkins v. Hawkins, 219 Ala. 31, 121 So. 92; Goldman v. Hicks, 241 Ala. 80, 1 So.2d 18; Butler v. Butler, 222 Ala. 684, 134 So. 129; Stoddard v. Bruner, 217 Ala. 207, 115 So. 252; Blankenship v. Blankenship, 248 Ala. 489, 28 So.2d 409. This rule, of course, prevails unless there is clear and convincing evidence of the mother's positive unfitness, which is not shown. On the contrary, the evidence is without dispute that the mother gave that care and attention to her daughter, with all the attendant affection which any loving mother would or should bestow upon her child.

Added to this, it is not to be overlooked that in divorce actions where a minor daughter is an intelligent child of tender years, her wish and desire are entitled to weight in determining the matter of custody. Weems v. Weems, 255 Ala. 210, 50 So.2d 428.

The testimony of the child, Doris Joan, when examined, not only indicated her precociousness but also her preference to live with her mother. She testified in answer to questions propounded by the judge, in chambers:

"Q. [by the judge] Well, where would you like to live? A. I think I would rather stay with my mother.

"Q. You think you would rather stay with your mother? A. Yes, sir.

"Q. Why do you believe you would rather stay with her? A. I think she could take better care of me than Daddie; and I am used to her more.

"Q. Well, I believe that a mother just naturally understands a girl more than a Daddie? A. Yes, sir.

"Q. I think that is true. A. I think the Daddie is better in caring for the boys.

"Q. Yes; I think that is probably true. A. He can't buy her clothes, or nothing.

"Q. He doesn't know just what they wear, does he,—Daddie? A. No, sir.

"Q. Has Daddie been good to you since you have been living there? A. Yes, sir.

"Q. He has been good to you. A. He has been good to me. He does things for me that he didn't used to do since this come up.

"Q. Before all this came up he didn't do as much as he should? A. No, sir. I am fond of potato chips. He would bring potato chips sometimes when he came home. Now he brings a great big bag, and we eat them between us.

"Q. He brings a great big bag of potato chips now? A. Yes, sir.

"Q. Before all this came up was Daddie bad to you in any way? A. Oh, he just didn't do what he is doing for me now.

"Q. He is just more thoughtful now, I guess? A. Yes, sir.

&ast; &ast; &ast; &ast; &ast; &ast;

"Q. Now that you are there at your aunt's and uncle's [complainant's brother] house, what hours does your Daddie work? A. He works, I think it is, five o'clock. He has to check in at seven o'clock.

"Q. In the morning. A. Yes, sir. And he comes home usually around three-thirty. On Friday nights he goes to town before he comes home.

"Q. He works from seven to three? A. Yes, sir.

&ast; &ast; &ast; &ast; &ast; &ast;

"Q. Mother is a very thoughtful woman, isn't she? A. Yes, sir.

"Q. She looked after you mighty well? A. Yes, sir. She wouldn't let me do anything she thought I shouldn't.

"Q. Daddie, I think, has been the same way; he has been very thoughtful and kind; but he does it more now than he used to? A. Lots more.

"Q. Lots more. What other things besides more potato chips now; what does he do more now? A. He takes me swimming. He didn't take me a time last year. But then I went to Summer school all the time then, I studied.

"Q. I guess you go to movies more now than you used to? A. Yes, sir.

"Q. He has not bought you any clothes since you have been over there? A. Yes, sir; he bought this dress, and two pairs of shorts, and two tops.

"Q. You have to go with him to pick them out? A. Yes, sir.

"Q. Because he doesn't know anything about girls' clothes? A. No, sir. He got the shorts too big, and the tops too little.

"Q. Well, you are growing now; you grow very fast. A. Yes, sir.

\* \* \* \* \* \*

"Q. Before all this came up was Daddie pretty good to you? A. Yes, sir.

"Q. And your mother was too? A. Yes, sir.

"Q. They have always been very good to you? A. Yes, sir. Since I was the only child it seems I was petted. But they didn't.

"Q. They didn't spoil you? A. No, sir.

"Q. Well, that is wise. You are the only child, and sometimes the only child is spoiled; but not always. They have been very careful and very wise. Is there anything you think of that I should know? A. No, sir; I think I told you all I know."

■ We will try to summarize the relative positions of the child and the circumstances under which she might be living respectively with her father and with her mother, although the evidence was not sufficiently developed in this respect to justify a permanent finding on such a grave issue; it is left to the merest inference exactly where and under what conditions the child will be when living with either of her parents. This, probably because at the time of the hearing, so immediate to the separation of the parties, a more definite status could not be proven. Now, however, the situation must be different and the facts should be more fully developed so that the court may have more light as guide to decision. The record presently reflects that if the child lives with her father, she might either reside with his brother's family in their three-room "shotgun" house, containing one bedroom, with two children, all their family sleeping in the same room; or her paternal grandparents might move from their farm in north Alabama and come to Bessemer and live in her father's house, which is somewhat more commodious; her father must leave for his work daily about five o'clock in the morning and will not return until after three o'clock in the afternoon and, therefore, wherever the child might live with him, he cannot give that requisite personal care and attention to her as she attends her school. This situation does not impress the court as being sufficiently definite to justify the court in making up a decision as to what is for the best interest of the child. If she should live with her mother, presumably it will be with the child's maternal grandparents in Town Creek, Alabama, where the school facilities are also good. Her maternal grandfather has an income of approximately $400 a month and likewise has a fairly commodious abode. If living there, her mother can continue to give Doris Joan that personal care and attention as she undertakes her schooling, as well as at all other times, and we confess grave doubt, if these are the respective situations under which the child will live, that the trial court entertained a correct view when he awarded custody for the school months to the father and the summer months to the mother. The governing authorities would seem to require just the opposite conclusion. Since, however, the child is now in the middle of her school year and custody is, by the decree of the trial court, to be transferred to the mother at the end thereof and during the summer months, we will let the award to that extent stand, as a temporary order of custody to continue

238.

pending a further hearing in regard to the matter, and with direction to the trial court that the evidence be further developed on another hearing with a view of determining just what is for the best interest and welfare of this child before custody be re-transferred to the father and a permanent award be made. To the end stated, the decree below will be so modified.

In concluding the propriety of the custodial status of an infant, what is best is rarely a decision easily made. In undertaking the difficult task, courts and judges, aware of their own human limitations, but having applied as best they may what of wisdom and conscience they possess, find at least the satisfaction that their decisions in such matters are not immutable or irrevocable, but so long as the needs and conditions of the child may require, they may again give consideration to the well-being of the child. Griggs v. Barnes, supra. Such is the status here.

And it is established that divided custody is not wrong in principle, when it is for the best interest of the infant subject that she have the love, advice and training of both parents. Sneed v. Sneed, 248 Ala. 88, 26 So.2d 561.

No allowance was made for the child during the time she is in the custody of her mother and one should be, so the decree below should be modified, ordering appellee to pay to appellant during that period the sum of $15 per month for that purpose until further orders of the lower court, where full jurisdiction will obtain after this remandment.

Accordingly, the judgment will be in part affirmed and in part modified as herein stated, and the cause will be remanded to the lower court to the end that such orders be entered and process issued as may be necessary to give effect to the decree here made.

Affirmed in part, modified in part, and remanded with directions.

LIVINGSTON, C. J., and FOSTER and LAWSON, JJ., concur.