176 So.2d 22

Milton L. **CUNNINGHAM**

v.

Marie M. **CUNNINGHAM.**

**4 Div. 177.**

Supreme Court of Alabama.

June 3, 1965.

J. Hubert Farmer, Dothan, for appellant.

Halstead & Whiddon, Abbeville, for appellee.

LIVINGSTON, Chief Justice.

This suit was commenced in the Circuit Court of Henry County, Alabama, in Equity, by a bill of complaint filed by Milton Lee Cunningham, the father and husband, against Marie M. Cunningham, the mother and wife. The bill of complaint as originally filed sought the custody of Tracy Lee Cunningham, the four-year old son of the parties.

The pleadings, together with the rulings of the Chancellor, leave much to be desired concerning the issues presented to this Court for review.

As best we can fathom the record, which, to say the least is confusing, reveals the following facts:

The Cunninghams were married on April 28, 1957. Mrs. Cunningham gave birth to two children while they were living together as husband and wife. Tracy Lee Cunningham was born July 18, 1958, and Tara Marie Cunningham was born December 4, 1961. Some time about June 1962, the couple separated and lived apart for some 20 days. The wife admitted that prior to this separation she had committed an act, or acts, of adultery while she was attending a nursing school in Montgomery, Alabama. After being separated for a short time, and after the wife had admitted her misconduct, the parties resumed their marital relationship. On January 11, 1963, the parties again separated and have not lived together as man and wife since.

On January 12, 1963, the father filed his original bill seeking the custody of Tracy Lee Cunningham, the infant son of the parties. The record discloses that Milton Lee Cunningham entertained some misgivings as to the paternity of Tara Marie Cunningham. The wife filed an answer, made her answer a cross bill, and sought a divorce against the husband on the ground of cruelty. Then followed a series of pleadings and rulings thereon, which, as we have said, left much to be desired for the clarification of the issues actually involved. So far

as we can ascertain from the record, the pleadings consisted of a bill of complaint filed by the father seeking the custody of the oldest child, and an answer and cross bill of the wife seeking a divorce on the ground of cruelty and custody of the two children, and an answer by the husband to the cross bill of the wife. While we do not think it material here, we note that the husband amended his original bill and asked for a divorce against the wife on the ground of adultery. However, as we understand the pleadings that part of the husband's answer seeking a divorce from the wife on account of adultery was later stricken on the motion of the husband. The case was then set for an oral hearing before the Chancellor.

The decree appealed from granted a divorce from the appellant, Milton L. Cunningham, on the grounds of cruelty. The decree also awarded custody to the appellee of the youngest child, Tara Marie Cunningham, with the appellant having the right and privilege to visit with the minor. The care, custody and control of the oldest child, Tracy Lee Cunningham, was divided so that the child was within the care of the appellee from 11:30 A.M. on Friday until 11:30 A. M., or until kindergarten school assembles, on the following Monday morning. The care of Tracy Lee Cunningham was otherwise the responsibility of the appellant. The decree provided for permanent alimony and child support at the rate of $125.00 per month. The household furniture and appliances were ordered to be delivered to the appellee; she was, however, responsible for assuming the mortgage on said furniture and appliances. The decree also assessed the cost of the suit, including the solicitor's fees, against the appellant.

The principal controversy presented to this Court is whether or not the Chancellor committed reversible error in refusing to permit testimony showing acts of adultery on the part of the wife, committed prior to the separation in June, 1962, and about which she did not tell her husband, and which were unknown to him.

The record discloses the following colloquy between the Chancellor and the attorney for Milton Lee Cunningham on the cross-examination of Mrs. Cunningham:

"Q. Mrs. Cunningham, back in June of last year there arose a series of misunderstandings or trouble between you and your husband with reference to your marital relationship, didn't there?

"A. MR. HALSTEAD: We object. We understand we were not going behind the reconciliation in this matter.

"MR. FARMER: Judge, let me develop that a little bit and if I get off the track, stop me.

"THE COURT: I don't understand this to be anything into the details of her conduct prior to the reconciliation. I am going to limit it to anything that has happened since the reconciliation in July or August, whenever the reconciliation was had. I believe the testimony was that they were separated from some twenty days in June.

"MR. FARMER: Judge, let me state my position. If I understand it, one of the issues of the case would be any incident so far as breaking up any marriage relationship in January, that the misconduct of either party may be considered so far as—first with reference to whether or not she might or might not be entitled to alimony for herself.

"THE COURT: Not after there has been a reconciliation or condoning of anything. It is a question of what took place after they went back and entered into the marriage state.

"MR. FARMER: Let me make the further statement, if Your Honor Please, that assuming that at the time of the trouble that came up and reconciliation, that the wife made representation to her husband, that she had been unfaithful one time during their marriage and one time only, and that they forgave each other and had a

reconciliation and since that time, it develops that the statement made by her to him was wholly in error and a great deal more than that and he didn't know it at the time and she didn't report it at the time, as to any misconduct that might have something to do with their separation * * *.

"THE COURT: I am not going to turn this hearing into a character assassination, on something that happened prior to the condonation, if that is the effort that is being made. It don't make any difference, in the opinion of the Court, what a woman has done, if the husband forgives her for it and goes back and lives with her, then that past conduct is forgiven and is supposed to have been forgotten and the slate is wiped clean and they start over. I will let you go into anything that happened since they went back together that might be pertinent, but stay away from anything that happened prior to going back together and the condonation.

"MR. FARMER: Regardless of the magnitude and number of times that anything of that sort took place before the reconciliation, although he didn't know about it at the time?

"THE COURT: It is the opinion of the Court that after a man learns that his wife has been unfaithful once and forgives her condones it, the mere fact that she has been unfaithful and he doesn't know about more than once, doesn't have anything to do with it. That the forgiving of an adulterous act on the part of a wife, one act or a dozen acts, wouldn't make any difference if he goes back knowing that has happened and forgives her for it and he goes back and condones it, I don't think it is material whether she has made a full and complete confession to him of all the acts or not.

"MR. FARMER: I want to restate myself in my position to the Court. It is my theory and contention that although there is not pending any suit for divorce on his part against his wife for adultery, but the position I take and the position of my client is this, that we think we have a right to go into those matters, limited to the proposition first, as to the fitness of the mother to have full time custody of both children in the first place, and on the question of alimony in the second place on the general idea that she contributed substantially to the part of breaking up of the marriage by her own misconduct, the evidence of that misconduct is material on the trial of alimony alone, not so far as the divorce is concerned, but so far as the misconduct is concerned that would affect the right of the party or wife to alimony and would affect in the divorce decree the fitness of the mother of the children concerned, on down permanently, can be influenced and should be influenced.

"THE COURT: The first thing we did in starting off this case was by stipulation to admit that this witness was a fit person to have the care and custody of the children.

"MR. FARMER: That refers only to the custody of a fifteen-month old child.

"MR. HALSTEAD: Read your stipulation.

"MR. FARMER: That is only so far as you are concerned, is what it says.

"THE COURT: Under the stipulation you entered into upon the beginning of this trial, the Court is of the opinion that the testimony which you are attempting to elicit from this witness as to conduct prior to the reconciliation and condoning of her prior conduct, is not admissible in this case. And further, the Court is of the opinion that insofar as any conduct that this witness may have been guilty of prior to the reconciliation, it is not

proper to inquire into that, in regard to fixing permanent alimony in this case."

As we view the colloquy set out above, the ruling of the Chancellor is to the effect that any misconduct on the part of the wife prior to the reconciliation, however flagrant, is not admissible on the question of permanent child custody nor on the question of alimony even though the prior misconduct was unknown to the husband.

Section 26, Title 34, Code of Alabama 1940, provides:

"Cases in which divorces are to be refused.—No decree can be rendered on the confession of the parties, or either of them; or if it appear that adultery was committed by either, with the consent of the other, for the purpose of obtaining a divorce; or where both parties have committed adultery; or where there has been a condonation of adultery by the admission of the offending party to conjugal embraces, after *knowledge* of the commission of the crime; or when the husband knew of, or connived at the adultery of the wife." (Emphasis supplied.)

In Section 231, at page 416 of 17 Am.Jur., Divorce and Separation, it is stated:

"§ 231. Knowledge of Offenses Condoned.—One of the essential elements of condonation is knowledge on the part of the forgiving spouse, either actual or presumed, of the offense alleged to have been forgiven or condoned. This principle arises out of the nature of condonation itself, for a forgiveness of an offense necessarily implies a knowledge of the offense forgiven.

"Where a defendant is guilty of several matrimonial offenses, and the plaintiff, when he forgives the defendant, knows of one of them but not of the others, the condonation operates as to the known offense; but because of the lack of knowledge the forgiveness does not bar an action based on the others. In addition it should be pointed out that one may be willing to forgive a single offense, or even several of them, but may be unwilling to forgive a long course of profligacy or prostitution. Nevertheless, the attitude of the aggrieved spouse may be such that, suspecting many offenses or knowing about a few offenses and suspecting others, he intends to forgive all offenses, known and unknown. In such cases a knowledge of enough of the offenses to illustrate the scope and voluntary character of the forgiveness is sufficient."

See Shackelton v. Shackelton, 48 N.J.Eq. 364, 21 A. 935, 27 Am.St.Rep. 478; Crews v. Crews, 130 Fla. 499, 178 So. 139, and 32 A.L.R.2d 124, Anno. Divorce, Cruelty—Condonation; 27 C.J.S. Divorce § 60, page 203.

We repeat that the pleadings in this case leave much to be desired. At one time, the original bill as amended prayed for a divorce against the wife on the ground of adultery. This amendment to the original bill was stricken on the motion of the husband. There is, therefore, no pleading upon which a divorce from the wife could be granted the husband. There is still in the case the wife's cross bill seeking a divorce against the husband and for the custody of the two children involved, and for temporary and permanent alimony.

■■ The allowance of alimony is left much to the judicial discretion of the trial court, and the misconduct of the wife, even though the husband does not seek or pray for a divorce may be considered as in a measure palliating the husband's offense and as abridging the wife's claim for alimony. McGregor v. McGregor, 257 Ala. 232, 58 So.2d 457, and Pope v. Pope, 268 Ala. 513, 109 So.2d 521.

■ If the wife was guilty of adultery which was unknown to the husband and not condoned by the reconciliation, the husband should have been permitted to

show it as bearing on the question of custody of the children and the amount of alimony awarded the wife.

The decree is due to be reversed and the cause remanded.

Reversed and remanded.

LAWSON, GOODWYN and COLEMAN, JJ., concur.